In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2435

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

COREY STINEFAST,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cr-768-2 — **Amy J. St. Eve**, *Judge.*

ARGUED APRIL 10, 2013 — DECIDED AUGUST 1, 2013

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After delivering a compact disc full of child pornography to an FBI informant, Corey Stinefast was arrested and his home was searched. When agents completed the search, they discovered Stinefast's collection of over 190,000 images of child pornography, including images depicting the sexual molestation of infants. Stinefast was eventually charged with distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). He pled guilty to

the charge and received an above-guideline sentence of 216 months.

On appeal, Stinefast presents three challenges to his sentence. He first contends that during his sentencing hearing the prosecutor improperly referred to inadmissible and potentially incriminating statements Stinefast purportedly made to the government's psychiatric expert and that this comment led to his unreasonably lengthy prison term. We disagree. The prosecutor's remark did not rise to the level of impropriety necessary to constitute plain error and, even if it did, Stinefast failed to show that it influenced the district court's sentencing decision. Stinefast next argues that the district court procedurally erred by failing to address the argument that his psychological disorders stemming from his own history of sexual abuse limited his ability to refrain from engaging in child-pornography-related activity. We see no error. The district court's brief mention of the issue was sufficient given the minimal evidence Stinefast presented to substantiate his diminished capacity argument. Finally, Stinefast asserts that the district court imposed an unreasonably high sentence. We think the court arrived at a reasonable sentence based on its thorough examination of the relevant sentencing factors and specific aspects of Stinefast's background such as the vast amount of child pornography in his possession. As none of Stinefast's issues have merit, we affirm.

## I. BACKGROUND

In May 2009, federal agents began working with a cooperating individual ("CI") after discovering a large amount of child pornography during a search of his residence. Hoping to secure favorable treatment from the government, the CI

informed agents that he was part of a group who met in person and on the internet to view and trade child pornography. The CI identified Corey Stinefast and his co-defendant Jose Garcia as the other members of this group.

On August 25, 2009, the CI, equipped with a hidden recording device, met up with Stinefast and Garcia at Six Flags Great America in Gurnee, Illinois. The three men wandered around the park for several hours, stopping periodically to allow Stinefast to surreptitiously record and photograph young boys. Eventually, the group left the park and stopped at Stinefast's car in the parking lot. Stinefast retrieved a disc from his car and handed it to Garcia. Garcia then gave the disc to the CI who promptly delivered it to federal agents. The disc Stinefast provided contained numerous images and videos of child pornography.

Not long after the theme park meeting, FBI agents arrested Stinefast at his home and executed a search warrant. During the search, agents discovered in excess of 190,000 images and hundreds of videos depicting child pornography. Stinefast's collection included, among other items, images depicting the sexual molestation of an infant. The government eventually charged Stinefast with one count of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A).

On March 14, 2011, Stinefast notified the government of his intent to present expert evidence relating to a mental disease bearing on the issue of his guilt under Federal Rule of Criminal Procedure 12.2(b). In response, the government filed a motion to have its own expert examine Stinefast and evaluate his mental condition. In an agreed order, the district court granted the government's motion and set forth the conditions under which the examination would take place.

Soon after the government's expert completed her examination, Stinefast filed a notice that he had withdrawn his mental disease defense along with a motion to preclude the government's expert from communicating with the government, the court, or anyone else about her examination of Stinefast. The government asked the district court to deny the motion because the relief sought might interfere with the expert's mandatory reporting obligations under Illinois law to the extent such obligations were triggered during Stinefast's examination. *See, e.g.,* 325 ILCS 5/4 (requiring psychiatrists with reasonable cause to believe a child known to them in their professional capacity may be suffering from abuse to file a report with Illinois Department of Children and Family Services). In reply, Stinefast contended that the government's reference to its expert's putative reporting obligations amounted to a disclosure that Stinefast had admitted abusing children during his examination. Stinefast contended that such disclosure was prohibited under both the Fifth Amendment and Federal Rule of Criminal Procedure 12.2(c)(4).

The district court granted Stinefast's motion in large part and later ordered the government's expert to refrain from distributing her report to the court or to the Assistant United States Attorneys assigned to Stinefast's case. The court did not directly address whether the government's arguments constituted improper disclosures of information from Stinefast's examination in violation of Rule 12.2(c)(4). When Stinefast's counsel suggested that the court may have difficulty ignoring the government's implication that Stinefast had revealed that he sexually abused children during his examination, the court noted that "[w]ell, I can certainly distinguish between what is admissible and what is not admissible."

Stinefast eventually pled guilty to distributing child pornography.

At sentencing, Stinefast maintained that he had diminished capacity at the time he committed the offense that rendered him less culpable than an ordinary offender. The sources of Stinefast's purported diminished capacity were his low IQ and various psychological disorders (e.g., depression, anxiety, and post-traumatic stress disorder) that he claimed were the result of sexual abuse he suffered at the hands of his older brother. Stinefast relied upon a psychological evaluation from the year 2000 that documented his abuse accusations as well as diagnoses for his mental health ailments. According to Stinefast, his psychological disorders and lack of intelligence rendered him more amenable to distributing child pornography and militated in favor of a lesser sentence in his case.

In its sentencing presentation, the government highlighted Stinefast's criminal history, inability to refrain from criminal behavior, and the seriousness of his offense in requesting a sentence above the range recommended by the Guidelines. In particular, the government focused on Stinefast's 2000 conviction in Wisconsin state court for two counts of causing a child to expose his genitals. According to the complaint in that case, Stinefast confronted two young boys in a public washroom and pulled down their swimsuits to view their genitals. The Wisconsin court sentenced Stinefast to a brief period of incarceration and ordered him to complete sex offender treatment. The government argued that Stinefast's inability to refrain from sexually exploiting children despite his brief jail time and treatment suggested that a lengthy prison term was necessary to specifically deter Stinefast from

future offenses. Prosecutors also highlighted the volume of child pornography Stinefast had amassed in support of its request for a higher sentence.

At the conclusion of its argument, the government referred to the earlier dispute regarding Stinefast's statements during his psychological evaluation by the government's expert:

[Government]: And one last thing–

The Court: Yes.

[Government]: –for just the record, your Honor.

The Court: Yes.

[Government]: Months and months and months ago, there was discussion held on the record regarding a psychosexual evaluation of Mr. Stinefast by the government. And as we discussed on the record months and months ago, the Court, as you acknowledged, is fully capable of hearing some things and considering them and deciding not to consider them.

And I wanted to put forth on the record today that anything the Court heard during those hearings regarding—for instance, the government's obligation to make certain disclosures—you are not considering as part of your sentence.

The Court: I am not considering those as part of my sentence.

The district court sentenced Stinefast to 216 months' imprisonment, a term of incarceration more than five years greater than the top of his Guidelines range of 121 to 151 months. In justifying its above-guidelines sentence, the court

cited the amount of child pornography Stinefast had accumulated, the particularly disturbing nature of some of the images, and Stinefast's continued sexual exploitation of children despite an earlier run-in with the criminal justice system. The court also rejected Stinefast's argument that he deserved a reduced sentence because of psychological trauma caused by the sexual abuse he endured during his childhood. Stinefast now appeals.

## II. ANALYSIS

Stinefast presents a number of challenges related to his sentence. With regard to the sentencing hearing, Stinefast contends that the prosecution acted improperly by reminding the court that Stinefast may have revealed prior acts of child abuse during the examination by the government's expert. Stinefast also maintains that the district court committed a procedural sentencing error by failing to consider his diminished capacity argument. Furthermore, Stinefast contends that the district court's above-guideline sentence was substantively unreasonable.

### A. No Plain Error Resulted from Prosecutor's Comments at Sentencing

Stinefast argues that the prosecutor engaged in misconduct during the sentencing hearing by referring to Stinefast's purported damaging statements to the government's expert. When a defendant argues that a prosecutor made an improper comment for the first time on appeal, we review the claim under the plain error standard. *United States v. Turner*, 651 F.3d 743, 751 (7th Cir. 2011). To succeed under the plain error standard, Stinefast first must show that the prosecutor's comments "were obviously or clearly improper." *United*

*States v. Jones*, 600 F.3d 847, 856 (7th Cir. 2010). If the remarks were blatantly improper, Stinefast must also demonstrate that the statements prejudiced him. *United States v. Washington*, 417 F.3d 780, 786 (7th Cir. 2005).

We do not think the prosecutor's comment was clearly improper. Stinefast describes the prosecutor's remark as an attempt to inflame the judge's passions by referring to Stinefast's inadmissible statements to the government's expert regarding prior instances of molestation. The comment seems better construed, however, as an attempt to protect the record on appeal by asking the court to confirm that it did not consider the government's representations regarding this sensitive issue when imposing sentence. Given that the comments at issue are ambiguous at best, we are not inclined to find that the prosecutor's statement was clearly improper. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning").

We note, however, that protecting the record in this way was unnecessary under the circumstances. While we appreciate the government's attempts to make our jobs easier by clarifying issues with the trial court, the district court's earlier rulings on the subject should have alleviated any concerns about the district court's reliance on anything Stinefast may have said to the government's expert. Months before sentencing, the district court issued a minute order in which it expressly ordered the government's expert not to distribute her examination report "to any party, including the court." Moreover, in resolving a separate dispute about the report, the district judge stated in open court that the report "is not going to be used against Mr. Stinefast." In light of the preex-

isting clarity of the record on this issue, we think the government may have been a little too cautious in raising such a sensitive issue at the sentencing proceeding.

Even if we found the prosecutor's comment to be improper, however, Stinefast's claim would not succeed because he cannot show prejudice. We are convinced that the district court judge did not take the prosecutor's problematic statements into account in imposing sentence. Judges often hear improper argument and other forms of inadmissible evidence that they are presumed to disregard when deciding matters of importance. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981). To overcome this presumption of conscientiousness on the part of district judges, a party must present some evidence that the statement influenced the court's decisionmaking. *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000). In this case, the district court explicitly stated that "I am not considering those as part of my sentence" after the prosecutor mentioned Stinefast's incriminating statements to the government's expert. We see no reason not to take the court at its word. In the absence of any indication that the district court predicated her sentencing decision on Stinefast's purported admissions, we must reject Stinefast's prosecutorial misconduct challenge.

## B. No Error Resulted from District Court's Consideration of Diminished Capacity Argument

Stinefast also contends that the district court failed to give meaningful consideration to his argument that he was less deserving of punishment because his offense was the product of a diminished capacity. "In selecting an appropriate sentence, district courts are expected to address principal, nonfrivolous arguments in mitigation"; failure to do so

constitutes procedural error. *United States v. Chapman*, 694 F.3d 908, 913-14 (7th Cir. 2012). But "the judge's failure to discuss an immaterial or insubstantial dispute relating to the proper sentence would be at worst a harmless error." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

Stinefast maintains that the district court erred in failing to address the effect of Stinefast's mental condition on his ability to refrain from engaging in the offense of conviction. As a general matter, courts may impose a lesser sentence based on a defendant's diminished capacity. *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). A defendant may be entitled to a lower sentence on this basis if, for example, the defendant has "a significantly impaired ability to…control behavior that the defendant knows is wrongful" and shows that this lack of restraint "contributed substantially to the commission of the offense[.]" U.S.S.G. § 5K2.13. So in order to warrant a lower punishment due to a diminished capacity, there must be some "showing that the defendant's reduced mental capacity contributed to the commission of the offense; such a link cannot be assumed." *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir. 1992).

We think the court's discussion, while brief, reflects its consideration and rejection of Stinefast's diminished capacity argument. As Stinefast acknowledges, the court did discuss the relationship between his psychological disorders and his offense:

> I will accept your representation and the representation of the doctor from the report in 2000 that you were sexually abused. And no doubt that has had an impact on you. And no doubt during this time period you were struggling with your own problems of be-

ing sexually abused as a child. But knowing what that did to you, you turned around and victimized children.

As the excerpt above shows, the court acknowledged Stinefast's serious mental health issues but decided that they had no effect on his willingness to refrain from distributing child pornography. Instead, the court reasoned that Stinefast was more deserving of punishment because he continued to develop the market for child pornography despite knowing the harm inflicted on the children involved in its production and distribution.

Moreover, the court's discussion of this argument was more than sufficient given its lack of evidentiary support. Although Stinefast presented evidence showing that he sustained serious psychological trauma as the victim of sexual abuse, there was no evidence at all linking his condition to his offense conduct. The psychiatric evaluation Stinefast submitted contained diagnoses for post-traumatic stress disorder, depression, and anxiety resulting from his sexual abuse. But the report did not connect these mental health issues with Stinefast's sexual fascination with children generally or to the specific instance of child pornography distribution that led to his conviction. Indeed, the report noted an absence of evidence that Stinefast was sexually attracted to children. Moreover, despite Stinefast's suggestions that the report showed he lacked the intellectual wherewithal to appreciate the unlawful quality of his actions, the same report also states that "Mr. Stinefast is of above-average or well-above average intelligence[.]" The lack of evidence establishing a link between Stinefast's psychological disorders and the offense of conviction rendered his diminished capacity

argument immaterial. *See United States v. Portman*, 599 F.3d 633, 639 (7th Cir. 2010) ("[A] legal diminished capacity finding also requires a causal link between the mental capacity and the crime"); *see, e.g., United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007) (affirming sentence when defendant did not "present any evidence suggesting that a low-normal IQ, or learning disabilities, break down a person's resistance to becoming…a producer of child pornography"). Although Stinefast's attorney argued that this connection existed in this case, these unsupported assertions are not evidence and cannot take the place of expert reports or other scientific evidence needed to establish such a link. *United States v. Chapman*, 694 F.3d 908, 914-15 (7th Cir. 2012). Under the circumstances, even if we found any error resulting from the district court's discussion of this argument, it would be harmless. *Cunningham*, 429 F.3d at 679.

### C. Stinefast's Sentence Was Reasonable

Stinefast also argues in passing that his above-guidelines sentence was unreasonable. We review the reasonableness of a district court's sentencing decision under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). "We will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Taylor*, 701 F.3d 1166, 1174 (7th Cir. 2012) (quoting *United States v. Adebe*, 651 F.3d 653, 657 (7th Cir. 2011)). If the court imposes an above-guideline sentence, the court "must provide a justification that explains and supports the magnitude of the variance." *United States v. Bradley*, 675 F.3d 1021, 1025 (7th Cir. 2012). "An above-guidelines sentence is more likely to be reasonable if it is

based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *United States v. Jackson*, 547 F.3d 786, 792-93 (7th Cir. 2008) (internal quotation marks omitted).

We are convinced that the district court appropriately exercised its discretion by selecting an above-guidelines sentence for Stinefast. In deciding to impose a term of incarceration more than five years greater than the top of Stinefast's guidelines range, the district court considered a number of section 3553(a) factors and concluded that they warranted a more severe sentence in this case. With respect to Stinefast's personal characteristics, the court focused on Stinefast's massive collection of child pornography and reasoned that his insatiable demand for such materials likely contributed to the production of other images involving the sexual exploitation of children. The court also cited the particularly disturbing quality of Stinefast's collection, including images of infants being sexually abused, as favoring a higher sentence. In addition, the court also noted Stinefast's criminal history, particularly his previous convictions for causing children to expose their genitals, as aggravating factors. Moreover, the court relied heavily on the need for specific deterrence in imposing a higher sentence for Stinefast. In discussing this issue, the court found that Stinefast had shown his incorrigibility by viewing and distributing child pornography even after serving jail time and completing sex offender treatment in connection with his prior convictions. In summary, the district court did not abuse its discretion in determining that these certain considerations unique to Stinefast warranted an above-guidelines sentence in his case.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.