# United States Court of Appeals
## For the First Circuit

No. 15-1353

UNITED STATES OF AMERICA,

Appellee,

v.

LAWRENCE MADSEN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Kayatta, Selya and Stahl,
Circuit Judges.

Tina Schneider on brief for appellant.
Donald Feith, Acting United States Attorney, and Charles L. Rombeau, Assistant United States Attorney, on brief for appellee.

January 8, 2016

**SELYA**, **Circuit Judge**.  Defendant-appellant Lawrence Madsen asserts that the prosecutor's statements during closing argument in his criminal trial misstated the evidence, amounted to proscribed comments on his failure to testify, and improperly shifted the burden of proof.  He further asserts that the district court abused its discretion in imposing a variant sentence above the guideline sentencing range (GSR).  Finding these claims to be without merit, we affirm the defendant's conviction and sentence.

## I.  BACKGROUND

In August of 2014, a federal grand jury sitting in the District of New Hampshire charged the defendant with seven counts of aiding and abetting the making of material false statements in connection with the acquisition of firearms.  See 18 U.S.C. §§ 2, 922(a)(6), 924(a)(2).  The indictment addressed a series of seven gun purchases (involving a total of nine guns) by a codefendant, Bretton Crawford.  Crawford eventually pled guilty and thereafter cooperated with the government.  The defendant, however, stood his ground.

We rehearse the key facts as the jury could supportably have found them at trial.  See United States v. Gobbi, 471 F.3d 302, 305 (1st Cir. 2006). Crawford testified that he had purchased the guns identified in the indictment as a "straw" for the defendant, falsely describing himself on federal forms as the real buyer.  According to Crawford, the defendant (a Massachusetts

resident) relied on Crawford's ability to purchase firearms in New Hampshire in order to acquire weapons that he (the defendant) could then re-sell illicitly to third parties. The defendant funded Crawford's purchases and, in addition, paid him a $100 emolument for each firearm.

Crawford's version of events was corroborated in substantial part by the dealers from whom he purchased the guns. It was also corroborated by text messages between Crawford and the defendant, text messages between the defendant and a third party, and a surveillance video showing Crawford and the defendant together in a gun shop. The defendant did not testify.

At the close of all the evidence, the jury convicted the defendant on six of the seven counts. During the sentencing hearing, the district court set the defendant's base offense level at twelve; added a four-level enhancement because the offense conduct involved between eight and twenty-four weapons, see USSG §§2K2.1(a)(7), (b)(1)(B); and placed the defendant in criminal history category I. Although these calculations yielded a GSR of 21 to 27 months, the court varied upward and imposed a 36-month term of immurement. This timely appeal followed.

## II. ANALYSIS

In this venue, the defendant raises claims of both trial and sentencing error. We consider these claims sequentially.

## A.  The Prosecutor's Closing Argument.

Grasping the defendant's claim of trial error requires some additional background.  In his opening statement, defense counsel began by telling the jury:

> This is Larry Madsen.  Larry is innocent of these charges, ladies and gentlemen.  He didn't do what the government has accused him of doing, and I'm going to talk to you a little about the evidence in the case.

A few moments later, defense counsel returned to this theme, declaring: "Well, Larry didn't do it.  He's not guilty of these crimes."  Later, defense counsel spoke as if the words were coming from the defendant:

> [H]e told [the police], yeah, I know Bretton Crawford. He's my friend.  And, yeah, I went with him on several occasions when he purchased guns, but I didn't give him money.  I didn't ask him to go buy guns for me.  I didn't tell him what guns to buy.  I didn't do it.

We fast-forward to the government's closing argument. There, the prosecutor reviewed the evidence introduced at trial. Near the end of his argument, the prosecutor reminded the jury of defense counsel's opening statement:

> Now, the judge has told you and I'll repeat, a defendant has no obligation to put on any evidence of any kind. But I would say it's fair to at least think about what was told to you in the opening.  The defendant's opening said, quote, I am innocent.  Quote, he did not do it. So you should think about that when you look at the evidence.  Is the defendant innocent?  Did he not do it?
>
> Let's consider the evidence that I've told you in teasing that out.  Is he innocent.  Did he not do it.

The defendant did not contemporaneously object to any of these remarks. Thus, our review of the challenge that he raises for the first time on appeal is for plain error. See United States v. Taylor, 54 F.3d 967, 972-73 (1st Cir. 1995).

To obtain relief under this standard, a defendant must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). This is a difficult hurdle to vault: plain error review exists to correct "blockbusters," not "the ordinary backfires . . . which may mar a trial record." United States v. Griffin, 818 F.2d 97, 100 (1st Cir. 1987).

The defendant marshals a trio of contentions stemming from the prosecutor's closing argument. None of these contentions is persuasive.

1. **Mis-quotation.** To begin, the defendant suggests that the prosecutor's mis-quotation of defense counsel's opening statement constituted prosecutorial misconduct. The premise that underlies this suggestion is sound: an incorrect recitation of either the evidence or the record in a closing argument may constitute prosecutorial misconduct. See United States v. Azubike, 504 F.3d 30, 38 (1st Cir. 2007). In this context, "misconduct" is not limited to "deliberate wrongdoing," but may

include "a statement of fact that is mistaken or unsupported by any evidence."  Id.

Nevertheless, the conclusion that the defendant would have us draw from this premise is questionable.  Especially under plain error review, we must assess the prosecutor's statements "within the context of the case as a whole."  United States v. Pires, 642 F.3d 1, 14 (1st Cir. 2011).  Such an assessment requires us to consider "the frequency and deliberateness of the prosecutor's comments, the strength and clarity of the trial judge's instructions, and the strength of the government's case against the defendant."  United States v. Morales-Cartagena, 987 F.2d 849, 854 (1st Cir. 1993).

Viewed through this lens, the defendant's claim of error cannot withstand scrutiny.  First and foremost, the substantive difference between the versions is barely visible to the naked eye.  The prosecutor appears to have conflated two of defense counsel's statements — "Larry is innocent" and (speaking in the defendant's voice) "I didn't do it" — into the unitary phrase "I am innocent."  It is hard to conceive of such a minor alteration as a basis for a finding of prosecutorial misconduct.  After all, the prosecutor's statement accurately conveyed the essence of what defense counsel had said.

Furthermore, the mis-quotation was a one-time occurrence, and there is no indication that it was deliberate.  In

addition, the district court made clear to the jury, both at the beginning and at the end of the trial, that statements by counsel were not evidence. Those lucid instructions dissipated any realistic threat of prejudice. See, e.g., Pires, 642 F.3d at 15; United States v. Ortiz, 447 F.3d 28, 36 (1st Cir. 2006); Morales-Cartagena, 987 F.2d at 855. And, finally, the government's case against the defendant was robust. Under these circumstances, it is fanciful to suggest that the prosecutor's trivial mis-quotation amounted to plain error.

**2. Failure to Testify.** Taking a different tack, the defendant asseverates that the excerpted portion of the prosecutor's closing argument comprised an improper comment on his failure to testify. We discern no plain error.

It is, of course, common ground that "[c]omment by a prosecutor on a defendant's failure to testify violates the Fifth Amendment guarantee against self-incrimination." United States v. Wihbey, 75 F.3d 761, 769 (1st Cir. 1996). Where, as here, the allegedly infringing comment is not explicit, an inquiring court must examine whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Vázquez-Larrauri, 778 F.3d 276, 286 (1st Cir. 2015) (quoting United States v. Newton, 327 F.3d 17, 27 (1st Cir. 2003)). As this test implies, much depends on context. See United

States v. Sepulveda, 15 F.3d 1161, 1187 (1st Cir. 1993). And when — as in this case — no contemporaneous objection occurred, "it seems fair to give the arguer the benefit of every plausible interpretation of her words." Id.

In the case at hand, there is nothing to suggest a manifest intent to comment on the defendant's silence. Nor is there anything to suggest that the jurors would naturally and necessarily have taken the challenged statement as a comment on the defendant's failure to testify. Fairly viewed, the prosecutor's closing was not designed to criticize the defendant's failure to testify but, rather, was designed to refocus the jury's attention on the trial evidence. The most natural understanding of the challenged statement is as a reference back to the words used by defense counsel in his opening statement. Giving the arguer the benefit of the interpretive doubt, see id., there was no plain error.

3. **Burden of Proof.** In a final variation on his theme, the defendant complains that the prosecutor's remarks improperly shifted the burden of proof. This fusillade, too, misses the mark.

To be sure, the government has the burden of proving all the elements of a criminal charge beyond a reasonable doubt; and "a prosecutor may cross the line by arguing to the jury that the defendant is obligated to present evidence of his innocence." United States v. Diaz-Diaz, 433 F.3d 128, 135 (1st Cir. 2005).

But that is not what happened here. Even if the challenged statements are somehow susceptible to a burden-shifting interpretation — a matter on which we take no view — we cannot simply assume, in the absence of a contemporaneous objection, that the jury interpreted the prosecutor's words in the worst possible light. See Vázquez-Larrauri, 778 F.3d at 286, 287 n.8; United States v. Wilkerson, 411 F.3d 1, 8-9 (1st Cir. 2005). Stripped of rhetorical flourishes, the defendant's plaint is nothing more than an invitation "to fish in the pool of ambiguity," Sepulveda, 15 F.3d at 1188 — and on plain error review, such invitations ought not to be accepted.

We add, moreover, that any possibility of harm was ameliorated by the surrounding circumstances. For one thing, the district court gave strong and explicit instructions about the burden of proof, the presumption of innocence, and the fact that the court, not counsel, is the source of the applicable law. For another thing, there was substantial evidence of the defendant's guilt. Given the record as a whole, any error surely would not sink to the level of plain error.[1] See Wilkerson, 411 F.3d at 8-9; Wihbey, 75 F.3d at 770-71.

---

[1] The defendant's reliance on our decision in United States v. Roberts, 119 F.3d 1006 (1st Cir. 1997), is mislaid. That case involved a clear burden-shifting statement by the prosecutor: that "the defendant has the same responsibility [as the government] and

## B.    **The Sentencing Determination.**

The process of determining the reasonableness of a sentence is bifurcated: an inquiring court must "first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).    Generally speaking, both aspects of this review are for abuse of discretion. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

In this case, the district court — after noting that the applicable GSR was 21 to 27 months — applied an upward variance and sentenced the defendant to 36 months in prison.    In doing so, the court concluded that the guideline range was inadequate because the offenses of conviction involved the defendant's manifest intent to re-sell the purchased firearms on a secondary (illegal) market.    The defendant challenges this sentence as both procedurally and substantively unreasonable.[2]

**1.    Procedural Reasonableness.**    Procedurally, the defendant contends that the district court insufficiently

---

that is to present a compelling case." Id. at 1015 (alteration in original).  Nothing of that sort transpired here.

[2] The government posits that some aspects of the defendant's claims of sentencing error should be reviewed only for plain error. We bypass this argument because, regardless of the standard of review, the claims are bereft of merit.

explained the upward variance and erroneously relied on factors already taken into account by the sentencing guidelines. This contention is futile.

As a general rule, "a sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale . . . but it does not require the court to be precise to the point of pedantry." United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir.), cert. denied, 135 S. Ct. 293 (2014). When a court imposes an upwardly variant sentence, its rationale "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013) (quoting Martin, 520 F.3d at 91). The factors elaborated by the court "must justify a variance of the magnitude in question." Martin, 520 F.3d at 91.

In this case, the sentencing court's explanation easily passes muster. At the disposition hearing, the court indulged in an extensive colloquy with the prosecutor and defense counsel. It addressed a range of concerns, including the proportionality of the defendant's sentence vis-à-vis Crawford's sentence, the defendant's personal circumstances, and the like. The court placed great emphasis on the serious nature of the defendant's conduct: the evidence at trial clearly showed that the defendant had arranged straw purchases of firearms in New Hampshire as a

- 11 -

precursor to re-selling the purchased firearms illegally in Massachusetts. The court concluded that:

> [A]n upward variance is warranted here and for the reasons that I've specified. I don't think the guidelines really adequately capture how — the significance of the harm that a person causes when they engage in the business of acquiring guns for resale through illegal means. I just think that the harm to the society is really great with that kind of offense. And so when I consider the purposes of the sentencing statute, the concept of a just sentence in my view calls for a significant period of incarceration. The need to protect the public from you warrants a significant period of incarceration and the need to deter others from engaging in similar kind[s] of conduct.

This was a plausible, cogent, and entirely sufficient explanation of the court's reasons for its upward variance. Nor were the factors upon which this variance rested double-counted. Although the guidelines suggest that straw purchases are usually made to circumvent state or federal law, see USSG §2K2.1, comment (n.4), the district court's concern in this case was broader: the defendant not only received guns from Crawford (his straw purchaser) but also sought to re-sell the guns illegally.

Relatedly, the defendant argues that the sentencing guidelines envision profit as a normal incident of the offenses of conviction and, thus, consideration of the profit motive as a basis for an upward variance was redundant. In support, the defendant relies on USSG §2K2.1, comment (n.15), which provides for a downward departure where no money changes hands between the straw buyer and person who employs him. But the defendant conveniently

ignores the rest of the application note, which conditions the appropriateness of such a downward departure on a finding that "(A) none of the enhancements in [USSG §2K2.1(b)] apply, (B) the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense, and (C) the defendant received no monetary compensation from the offense." Id. (emphasis supplied). Because none of these three conditions obtains here, the defendant's argument is unavailing.[3]

**2.  Substantive Reasonableness.**  This leaves only the defendant's claim that his 36-month sentence is substantively unreasonable.  That sentence represents a nine-month upward variance from the top of the defendant's GSR.  Although such a variance is substantial (a one-third increase from the GSR), "even a substantial variance does not translate, ipso facto, into a finding that the sentence is substantively unreasonable." Flores-Machicote, 706 F.3d at 25.

In examining the defendant's claim of substantive unreasonableness, we are mindful that "a range of reasonable sentences" exists for any given offense. Martin, 520 F.3d at 92.

---

[3] While the defendant suggests more broadly that sentencing enhancements built into the guidelines for the number of guns purchased serve as "a proxy for profit," see USSG §2K2.1(b)(1), nothing in the guidelines compels such a conclusion.

The question is not whether we, if sitting as a nisi prius court, would have meted out the same sentence.  See Del Valle-Rodríguez, 761 F.3d at 177.  Instead, the question is whether the sentence imposed is anchored by a plausible sentencing rationale and culminates in a defensible result.  See Martin, 520 F.3d at 96.

Considering "the duration of the sentence in light of the totality of the circumstances," Del Valle-Rodríguez, 761 F.3d at 176, we have scant difficulty in concluding that the defendant's sentence was within the universe of reasonable sentences for the offenses of conviction.  The court pointed, for example, to the defendant's principal culpability in the scheme and his goal of personal profit at the expense of the broader societal good.

Contrary to the defendant's importunings, this is not simply a case of procuring the services of a straw purchaser and falsifying the attendant paperwork in order to buy guns.  Rather, the most salient fact is that the defendant committed these offenses for the purpose of re-selling the purchased firearms on a secondary (illegal) market.  This fact distinguishes the defendant's case and takes it out of the heartland for the offenses of conviction. We conclude, therefore, that it was securely within the district court's sound discretion to vary upward from the GSR.

That leaves only the question of the extent of the variance (nine months).  Given the circumstances, we are confident that the extent of the variance was reasonable.

In sum, the district court's sentencing rationale —
which emphasized the reprehensible nature of the crimes and the
need for deterrence — was plausible; and the sentencing outcome is
plainly defensible.  It follows that the challenged sentence is
substantively reasonable.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above,
the defendant's conviction and sentence are

**Affirmed.**