# United States Court of Appeals
## For the First Circuit

No. 18-2010

UNITED STATES OF AMERICA,

Appellee,

v.

HERI E. BRUNO-CAMPOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Raúl S. Mariani Franco on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Antonio L. Pérez-Alonso, Assistant United States Attorney, on brief for appellee.

October 22, 2020

**SELYA**, **Circuit Judge**.  Particularly when prosecuting criminal cases, government attorneys must take care to turn square corners:  among other things, they must stick to the facts and reasonable inferences therefrom, abjuring speculation and surmise.  See United States v. Kilmartin, 944 F.3d 315, 337 (1st Cir. 2019) ("The prosecution — which has available to it the immense resources of the federal government — possesses a significant advantage in criminal cases, and there seldom is a good reason for a prosecutor to push the envelope of that advantage."), cert. denied, 140 S. Ct. 2658 (2020).  This sentencing appeal offers an example of a prosecutor who strayed beyond these boundaries.  In the end, though, defendant-appellant Heri E. Bruno-Campos fails to link the prosecutor's conjecture to the challenged sentence and also fails to identify any other cognizable sentencing error.  Consequently, we reject his appeal.

**I. BACKGROUND**

We briefly rehearse the relevant facts and travel of the case.  Where, as here, a defendant appeals a sentence imposed following a guilty plea, "we draw the facts 'from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing.'"  United States v. Miranda-Díaz, 942 F.3d 33, 37 (1st Cir. 2019) (quoting United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010)).

On the evening of November 1, 2017, the San Juan Intelligence Division of the Puerto Rico Police received confidential information that individuals in a gray Hyundai were on their way to the Vista Hermosa Public Housing Project to murder a named individual.  In response, agents were dispatched to the vicinity of the housing project in unmarked vehicles.  While the agents were on the scene, a white Kia nearly collided with an unmarked police vehicle.  The agents learned that the white Kia had been reported stolen a week earlier and proceeded to stop it.

As the Kia came to a halt, a passenger exited the vehicle carrying a gun.  The passenger was arrested, and the agents took from his person a .40 caliber Glock pistol loaded with a high-capacity magazine containing twenty-two rounds of ammunition.  The pistol had an attached "chip" that allowed it to fire automatically.  From this passenger, the agents also recovered another high-capacity magazine containing an additional twenty-two rounds of ammunition and a thirteen-round magazine loaded with eleven rounds.

Next, the agents proceeded to arrest the driver of the vehicle (the defendant).  From inside the vehicle, they recovered another Glock pistol loaded with a high-capacity magazine containing thirty rounds of ammunition.  This firearm, too, was modified to enable automatic fire.  To complete the picture, the agents found another high-capacity magazine loaded with twenty-

nine rounds of ammunition in the defendant's pocket and two more fully loaded fifteen-round magazines under the driver's seat.

A federal grand jury sitting in the District of Puerto Rico charged the defendant with illegal possession of a machine gun.  See 18 U.S.C. § 922(o).  After initially maintaining his innocence, the defendant reversed his field and entered a straight guilty plea on May 23, 2018.  The probation department filed a PSI Report and subsequently filed amended versions of it.[1]  The final version of the PSI Report recommended a guideline sentencing range (GSR) of forty-one to fifty-one months.

For reasons that are not readily apparent, the defendant initially filed a sentencing memorandum that sought a sixty-month prison sentence — a sentence above the apex of the GSR.  In short order, though, he filed a revised sentencing memorandum, urging a sentence of forty-one months' imprisonment.  At the disposition hearing, defense counsel renewed the request for a forty-one month term of immurement.  The government disagreed, seeking an upwardly variant sentence of sixty months' imprisonment.  In support, the prosecutor explained that "even though we have no evidence, obviously, to determine if the defendant and the codefendant were the ones that were on their way to kill an individual . . . the

_____

[1] The original version of the PSI Report did not account for certain of the defendant's prior convictions.  The amended versions of the PSI Report chronicled his entire criminal history and recommended his placement in Criminal History Category III.

- 4 -

amount of ammunitions and the type of firearms obviously, at least, would tell us that they were up to no good."

Nor did the prosecutor stop there. She added that "[i]t appears that the defendants both were on their way possibly to harm somebody, because there is no other reason as to why to have that amount of ammunition, magazines, and particularly those firearms modified to fire as machine guns."

The district court adopted the guideline calculations reflected in the final version of the PSI Report. It proceeded to weigh the sentencing factors limned in 18 U.S.C. § 3553(a). Pertinently, it explored the defendant's criminal history and personal characteristics at great length and remarked the serious purport of the "substantial amounts of ammunition" with which the defendant was apprehended. In the end, the court concluded that "the defendant's likelihood of recidivism warrants the protection of the community from further crimes from the defendant" and, therefore, an upwardly variant sixty-month term of immurement comprised a sentence that was both "just and not greater than necessary." This timely appeal followed.

## II. ANALYSIS

Review of a "criminal defendant's claims of sentencing error involves a two-step pavane." Miranda-Díaz, 942 F.3d at 39. First, we examine any claims of procedural error. See id. If the sentence passes procedural muster, we then proceed to address any

challenge to its substantive reasonableness.  See id.  In this instance, the defendant proffers claims of both procedural and substantive error.  We address those claims sequentially.

## A.  Claims of Procedural Error.

We ordinarily review claims of procedural error for abuse of discretion.  See United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020).  Here, however, the defendant's procedural claims were not seasonably raised in the district court, and review is for plain error.  See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  Plain-error review requires four showings:  "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id.  "The proponent of plain error (here, the defendant) must carry the devoir of persuasion as to each of these four components."  Kilmartin, 944 F.3d at 330.

1.  **Double Counting.**  The defendant first asserts that the district court committed procedural error by double counting data points already factored into the formulation of the GSR. Specifically, he asserts that the sentencing court premised its decision to vary upward on two factors already accounted for by the guidelines:  the defendant's possession of a fully automatic

handgun with "substantial amounts of ammunitions" and his criminal history.

Although the double counting of sentencing factors may sometimes constitute error, the defendant's assertions miss the mark. We have said before, and today reaffirm, that with respect to sentencing, "double counting is a phenomenon that is less sinister than the name implies." United States v. Zapata, 1 F.3d 46, 47 (1st Cir. 1993). After all, "[m]ultiple sentencing adjustments may derive from 'the same nucleus of operative facts while nonetheless responding to discrete concerns.'" United States v. Fiume, 708 F.3d 59, 61 (1st Cir. 2013) (quoting United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994)). It follows that a sentencing court may rely on a factor that is already included in the calculation of the GSR to impose an upward or downward variance as long as the court "articulate[s] specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006).

In United States v. Díaz-Lugo, we held that the sentencing court did not err in predicating the defendant's upwardly variant sentence on the fact that the defendant was caught with multiple machine guns and four high-capacity magazines because the relevant sentencing guideline, USSG §2K2.1(a)(4)(B),

contemplated only the possession of one machine gun. See 963 F.3d 145, 155 (1st Cir. 2020). So, too, the defendant had committed multiple violations of his probationary and supervised release conditions, but the relevant guideline provision, section 4A1.1(d), accounted for only one such violation. See id. Since such idiosyncratic facts "remove[d] this case from the heartland of the applicable guideline provisions," we discerned neither error nor abuse of discretion. Id.

The case at hand is cut from much the same cloth. The facts of record evince conduct beyond that contemplated by the relevant guideline provisions. The defendant was arrested while driving a vehicle containing several weapons, with a substantial amount of ammunition packed into four separate magazines, two of which were high-capacity magazines. By contrast, the relevant guideline provision is triggered by the possession of a single "semiautomatic firearm that is capable of accepting a large capacity magazine." USSG §2K2.1(a)(4)(B). For present purposes, that guideline calculation was supplemented by a two-level enhancement because the defendant was apprehended with three firearms. Nothing in either the guideline provision or the enhancement, however, accounted for the possession of more than one machine gun, substantial quantities of ammunition, and/or multiple high-capacity magazines. See USSG §2K2.1(a)(4)(B); USSG §2K2.1(b). The sentencing court made pellucid its concerns about

- 8 -

the seriousness of such firepower and such substantial quantities of ammunition, and those well-founded concerns sufficed to remove this case from the heartland of the relevant guidelines. See Díaz-Lugo, 963 F.3d at 155. There was no error, plain or otherwise.

In a related vein, the defendant submits that the sentencing court erred when it considered his "prior brushes with the law." In his view, his prior convictions were fully accounted for as the building blocks for the construction of his criminal history category.

Once again, the sentencing court specifically articulated why it believed the defendant's situation was sufficiently distinctive to warrant a variance. In particular, it emphasized the rapidity with which the defendant repeatedly violated the law. The court noted that this was the defendant's "fourth known arrest and conviction;" that one of those convictions occurred while the defendant was imprisoned; and that shortly after his release from prison, "it only took [the defendant] three months to again violate the law." In a nutshell, the court articulated why the temporal aspect of the defendant's criminal history distinguished his case from the mine-run of cases covered by the relevant guideline provision. There was no error.

**2.** **Contamination of the Record.** The defendant mounts a second claim of procedural error. He contends that the district court erred when it "based" its upwardly variant sentence on the

"need to protect the community from further crimes" because the court relied on a "record that had been contaminated with inflammatory and baseless allegations." Specifically, he contends that the "court assumed that [he] was a dangerous individual based on the manipulated, false, inflammatory and incorrect factual allegations made by the government" concerning his potential participation in a plot to commit murder.[2] Because the defendant did not object below to this claimed procedural bevue, we review this challenge under the demanding plain-error standard. See Duarte, 246 F.3d at 57; see also United States v. López, 957 F.3d 302, 310 (1st Cir. 2020) ("Review for plain error is not appellant-friendly.").

As an initial matter, we agree with the defendant that the prosecutor's quoted comments — to the extent that they suggested that the defendant was involved in a murder plot — lacked record support.[3] The prosecutor's conjecture was nothing more than

---

[2] To the extent that the defendant claims that he had no prior notice of the government's intention to discuss the alleged murder plot at the disposition hearing and, thus, was "blindsided," his claim is insubstantial. After all, the murder plot was referred to in both the affidavit supporting the complaint and in the plea colloquy.

[3] The prosecutor's related comment, suggesting that the defendant and his compatriot "were up to no good," is less objectionable. That comment strikes us as falling within the universe of reasonable inferences that might be drawn from the disclosed facts. Cf. United States v. Hernández, 218 F.3d 58, 68 (1st Cir. 2000) (explaining that "[p]rosecutors are free to ask the jury to make reasonable inferences from the evidence submitted at trial").

guesswork and, thus, was misplaced.  See United States v. Madsen, 809 F.3d 712, 717 (1st Cir. 2016).  Moreover, the prosecutor should have known better:  we have long warned about the dangers of such prosecutorial overreach.  See, e.g., United States v. Tierney, 760 F.2d 382, 389 n.9 (1st Cir. 1985).

In an attempt to excuse the prosecutor's conjecture, the government suggests that she mentioned the supposed murder plot only as "background information" to explain "why the officers were patrolling the area."  This suggestion reads the record through rose-colored glasses:  for aught that appears, the prosecutor did not merely provide background information but, rather, speculated that the defendant was the one involved in the alleged murder plot. At sentencing — as at other stages of a criminal case — prosecutors must hew to the record and not indulge in rank speculation.  See Madsen, 809 F.3d at 717.  This requirement is unwavering, and there is no exception for "background information."

To be sure, the government also notes that the prosecutor acknowledged that "no evidence" existed that the defendant and his compatriot were actually involved in the supposed murder plot. But this caveat, while softening the blow, did not give the government license to speculate about unfounded facts.  Cf. id. Had the prosecutor's statements been relied upon by the sentencing court, that reliance would have been problematic.  See United States v. Flete-Garcia, 925 F.3d 17, 36 (1st Cir. 2019) (explaining

that due process protects defendants by safeguarding against sentences that are predicated on information that is "false or materially incorrect" (quoting United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991))).

The Seventh Circuit has had occasion to examine an analogous claim of prosecutorial misconduct. See United States v. Stinefast, 724 F.3d 925, 930-31 (7th Cir. 2013). There, the appellant argued that the prosecutor engaged in misconduct during the sentencing hearing by referring to the appellant's damaging and inadmissible statements to the government's expert.[4] Id. The court of appeals held that the appellant could not show plain error because, even if the statements were improper, the appellant was not prejudiced inasmuch as the district court did not "take the prosecutor's problematic statements into account in imposing sentence." Id. at 931.

So it is here. Even though we readily assume that the prosecutor's gratuitous conjecture, unanchored in the record, was improper, we cannot conclude that the defendant was prejudiced (and, thus, that the error was plain). We explain briefly.

---

[4] At the disposition hearing in Stinefast, the prosecutor "wanted to put forth on the record" that "[the court was] not considering as part of [its] sentence" information "regarding a psychosexual evaluation of [the appellant]" by the government's expert that it had heard "months and months and months ago[.]" 724 F.3d at 929. As was the case here, the extra-record comments were unfavorable.

The third element of the plain-error standard "requires that the claimed error must be shown to have affected the appellant's substantial rights."  United States v. Bramley, 847 F.3d 1, 7 (1st Cir. 2017).  In other words, the proponent of plain error must demonstrate "a reasonable probability that, but for the error, the outcome would have been different."  Id.  Here, the defendant has not shown that the prosecutor's comment, though inappropriate, affected his substantial rights.

The decisive fact is that the record contains no indication that the sentencing court gave the slightest weight to the inappropriate comment.  Indeed, the court made no reference at all to that comment during the disposition hearing.  The most logical inference, then, is that the court found the comment irrelevant to the fashioning of the defendant's sentence, cf. United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012) (suggesting that a sentencing judge's failure to mention facts advanced by a party suggests that the facts were "unconvincing"), and relied instead on the considerations which it expressly articulated.  And this inference is consistent with the suggestion in the record that the court was aware that the government had no proof linking the defendant to any murder plot.  Given these facts, plain error is plainly lacking.

## B.  **Claim of Substantive Unreasonableness**.

This brings us to the defendant's assault on the substantive reasonableness of his sixty-month sentence. Specifically, he argues that the upwardly-variant sentence creates an "unreasonable sentencing disparity." And because the sentence is above the GSR, he says that it is "simply unfair under the totality of the circumstances."

We review challenges to the substantive reasonableness of a sentence for abuse of discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); Díaz-Lugo, 963 F.3d at 157. "In the sentencing context, 'reasonableness is a protean concept.'" United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). Thus, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Id. Our task, then, is "to determine whether the sentence falls within this broad universe." Rivera-Morales, 961 F.3d at 20.

We start with first principles: "[t]ypically, a sentencing court has a more intimate knowledge of a particular case than does an appellate court." Díaz-Lugo, 963 F.3d at 157. Consequently, a district court's discretionary determination as to the length of a particular sentence is due significant deference. See United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011). "As long as we can discern 'a plausible sentencing rationale' which

reaches 'a defensible result,' the sentence will be upheld." Id. at 31 (quoting Martin, 520 F.3d at 96).

When — as in this case — the district court imposes a variant sentence, an adequate explanation is required. See United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016). But even though "a sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale . . . it does not require the court to be precise to the point of pedantry." United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014). Viewed through this prism, we think that the court below provided a sufficient rationale for the sentence imposed.

To begin, the sentencing court clearly articulated why it believed this case differed from the mine-run. In this regard, the court noted that the defendant had a lengthy criminal history, which was temporally proximate to the offense of conviction. Additionally, the court pointed to the defendant's high risk of recidivism, which "warrant[ed] the protection of the community from further crimes from the defendant[,]" and the "substantial amounts of ammunition" with which the defendant was found. These considerations were directly relevant to the sentencing calculus, making the court's sentencing rationale eminently plausible.

Equally as important, the sixty-month sentence represented a defensible outcome. While the sentence constitutes

a nine-month upward variance from the top of the GSR, the mere fact that a sentence varies from the GSR does not, without more, render it substantively unreasonable.  See Madsen, 809 F.3d at 720; United States v. Flores-Machicote, 706 F.3d 16, 25 (1st Cir. 2013).  Here, there is no "more."

The sentencing court carefully considered and thoroughly reviewed the pertinent 18 U.S.C. § 3553(a) factors.  The court proceeded to determine that an above-the-range sentence was "just and not greater than necessary" to afford condign punishment.  It then closed the loop by choosing a relatively modest upward variance:  nine months.  This modest variance was well within the ambit of the court's discretion.

We are left, then, with only the defendant's remonstrance that his sixty-month term of immurement creates an "unreasonable sentencing disparity."  But this remonstrance never gets out of the starting gate.  Having made the allegation, the defendant does nothing to put any meat on its bare bones.

"We have admonished before that parties act at their peril in leaving 'the court to do counsel's work,' and we are reluctant to reward such tactics."  Flete-Garcia, 925 F.3d at 38 (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  Counsel has an obligation not merely to make claims, but to develop them.  See Zannino, 895 F.2d at 17.  Given the defendant's failure

to develop any argument in support of his clam of disparity, we consign that claim to the scrap heap.

That ends this aspect of the matter. The district court's plausible sentencing rationale, coupled with its easily defensible choice of a sixty-month sentence, combined to blunt the defendant's claim of substantive unreasonableness.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**