**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 20-1303

UNITED STATES OF AMERICA,

Appellee,

v.

EVARIS NAOMI GARCÍA-CAMACHO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

Johnny Rivera-González on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Robert P. Coleman III, Assistant United States Attorney, on brief for appellee.

October 19, 2021

**SELYA**, **Circuit Judge**.  In this sentencing appeal, defendant-appellant Evaris Naomi García-Camacho strives to persuade us that the district court procedurally and substantively erred in imposing her sentence by focusing on aggravating factors and disregarding mitigating factors.  Because these claims of error are not supported by the record, we summarily affirm the challenged sentence.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case.  "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."  United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

On February 25, 2019, Puerto Rico police officers executed a search warrant at an apartment in San Juan.  In the apartment, they found the appellant and her boyfriend.  They also found a cache of firearms, ammunition, and controlled substances.  The appellant was arrested and — having waived her rights under Miranda v. Arizona, 384 U.S. 436, 444-45 (1966) — confessed that she and her boyfriend were selling drugs.

On March 14, a federal grand jury sitting in the District of Puerto Rico returned an indictment, which charged the appellant with possession with intent to distribute a substance containing

cocaine base and cocaine (Counts 1 and 2, respectively), see 21 U.S.C. § 841(a)(1), (b)(1)(C); possession with intent to distribute a substance containing marijuana (Count 3), see id. § 841(a)(1), (b)(1)(D); and possession of a firearm in furtherance of a drug trafficking crime (Count 4), see 18 U.S.C. § 924(c)(1)(A). The appellant initially maintained her innocence, but later changed course and entered a guilty plea to Counts 2 and 4. Pursuant to her plea agreement, the government agreed to dismiss Counts 1 and 3.

The PSI Report recommended a guideline sentencing range of twelve to eighteen months in prison for Count 2. The statutory minimum sentence and, thus, the guideline sentence for Count 4 was sixty months (to run consecutive to any sentence imposed on Count 2). See id. § 924(c)(1)(A)(i), (c)(1)(D)(ii). Neither side objected to these guideline calculations.

At the disposition hearing, defense counsel advocated for a twelve-month term of immurement on Count 2 and a sixty-month term of immurement on Count 4. He described the appellant — then age 21 — as "very young" and "very immature" and stated that she was "in a very toxic relationship." He concluded by telling the court that the appellant's sentencing memorandum "includes everything."

The prosecutor took a different view, noting that the appellant "was participating in a drug trafficking operation that

- 3 -

was being run out of her apartment" and that there were many firearms, ammunition, and controlled substances in the apartment. She asked for an eighteen-month term of immurement on Count 2 and a sixty-month term of immurement on Count 4.

The appellant allocuted. She stated that she was "repentant" and asked the court for "a fair and reasonable sentence."

After confirming that it had reviewed the appellant's sentencing memorandum, the court adopted the guideline calculations contained in the PSI Report. It then canvassed the sentencing factors limned in 18 U.S.C. § 3553(a), discussing (among other things) the appellant's age, education, former employment, and substance-use history. Next, the court summarized the facts pertaining to the offenses of conviction and described the many incriminating items found in the apartment. The court expressed the view that the parties' sentence recommendations "d[id] not reflect the seriousness of the offenses, d[id] not promote respect for the law, d[id] not protect the public from further crimes by [the appellant], and d[id] not address the issues of deterrence and punishment." It concluded that a twelve-month prison sentence on Count 2, followed by a consecutive seventy-two-month prison sentence on Count 4, was a condign punishment. The court sentenced the appellant accordingly. After the court denied her motion for reconsideration, this appeal ensued.

**II. ANALYSIS**

The appellant contends that her sentence is both "procedurally and substantively unreasonable."[1] Despite this duality, she combines both points in a unitary claim of error. For ease in analysis, we examine her arguments through both procedural and substantive lenses.

**A.  The Procedural Lens**.

The appellant's principal claim of error is that the district court failed adequately to balance the section 3553(a) factors. Specifically, she asserts that the court "placed all weight on the negative factors and disregarded the multiple mitigating factors." Because this claim of error was not advanced below, our review is for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The appellant stumbles at the first step of plain-error review because she cannot show that any error occurred.

Where, as here, a sentencing court has properly calculated a defendant's guideline range, it becomes the court's task "to sift" all the information furnished to it in the sentencing memorandums and at the disposition hearing and to

---

[1] The appellant is less than precise as to whether she is challenging her twelve-month prison sentence on Count 2, her seventy-two-month prison sentence on Count 4, or both. We read the appellant's claim as being directed toward her seventy-two-month prison sentence. After all, she received exactly the sentence she requested on Count 2.

balance the relevant sentencing factors. United States v. Madera-Ortiz, 637 F.3d 26, 32 (1st Cir. 2011). When explicating the sentence imposed, the court "is not required to address [the sentencing] factors, one by one, in some sort of rote incantation." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). It is enough for the "court simply to identify the main factors driving its determination." United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016).

In the case at hand, the record makes manifest that the sentencing court adequately considered all the relevant section 3553(a) factors. The court read the appellant's sentencing memorandum and listened to defense counsel's arguments in mitigation. The court discussed the appellant's age, education, prior employment, substance-use history, and lack of any prior criminal record. It also discussed the offenses of conviction, describing in detail the firearms, ammunition, controlled substances, and other items discovered in the appellant's apartment. The court then factored in the gravity of the offenses, the need for respect for the law, the need to protect the public from further crimes by the appellant, and the goals of deterrence and condign punishment. No more was exigible.

The appellant's contention that the court "failed to take into consideration . . . [the a]ppellant's advanced pregnancy, youth, complete[ly] dysfunctional up bringing, [and]

spousal abuse syndrome" is without merit. These arguments were brought to the court's attention with unmistakable clarity. "[T]hat the district court did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored." United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012). The claim of procedural error fails.

## B. **The Substantive Lens**.

We next examine the appellant's claim of error through a more substantive lens. With respect to the substantive reasonableness of a sentence, our review is for abuse of discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020).

"In the sentencing context, 'reasonableness is a protean concept.'" United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). Consequently, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Id. Our task, then, is "to determine whether the [challenged] sentence falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020).

In making this determination, "we cannot substitute our judgment of the appropriate sentence for that of the sentencing court; to the contrary, we must accord significant deference to

the court's informed determination that the section 3553(a) factors justify the sentence imposed." Id. In the end, "a sentence is substantively reasonable so long as the sentencing court offers a plausible rationale and the sentence represents a defensible result." Id.

The court below adequately articulated its sentencing rationale. The court mulled the parties' arguments and considered the relevant section 3553(a) factors. It then determined that the gravity of the offenses, the need to protect the public, and a constellation of similar considerations demanded substantial punishment. We find its rationale plausible.

So, too, the challenged sentence represents a defensible result. Given the gravity of the offenses and the types and kinds of contraband involved, we cannot say that a seventy-two-month term of immurement on Count 4 was an indefensible result. Serious crimes warrant substantial punishment — and the district court recognized as much. The mitigating factors emphasized by the appellant do not tip the balance so heavily as to demand a different result.

Finally, the appellant complains that the seventy-two-month sentence was an upward variance and that she was given no advance notice of the sentencing court's intent to vary upward. There was nothing untoward about the court's deployment of an upward variance. "[A] mandatory minimum sentence is just that:

the lowest sentence that can lawfully be imposed. A sentencing court may lawfully select a higher sentence up to the statutory maximum."[2] United States v. Rivera-González, 776 F.3d 45, 51-52 (1st Cir. 2015). And unlike a sentencing departure, an upward variance from a properly calculated guideline range almost never requires advance notice to a defendant. See United States v. Daoust, 888 F.3d 571, 575 (1st Cir. 2018). No advance notice was required here.

**III. CONCLUSION**

We need go no further. For the reasons elucidated above, the challenged sentence is summarily

**Affirmed**. See 1st Cir. R. 27.0(c).

---

[2] In this case, the statutory maximum sentence on Count 4 was life imprisonment. See 18 U.S.C. § 924(c)(1)(A).