# United States Court of Appeals
## For the First Circuit

No. 18-1761

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN FRANK MIRANDA-DÍAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

Robert Millán on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, on brief for appellee.

November 5, 2019

**SELYA**, **Circuit Judge**.  Defendant-appellant Jonathan Frank Miranda-Díaz pleaded guilty to one count of possession of a firearm as a convicted felon.  See 18 U.S.C. § 922(g)(1).  Varying upward from the applicable guideline sentencing range (GSR), the district court sentenced the appellant to a 36-month term of immurement.  Taking aim at the sentencing court's consideration of both the conduct underlying a dismissed charge and a prior controlled substance conviction, the appellant submits that his sentence is both procedurally and substantively unreasonable. Concluding that the sentence is sound, we affirm.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case.  When — as in this instance — a sentencing appeal follows a guilty plea, we draw the facts "from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."  United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

On the morning of May 10, 2017, police officers in Carolina, Puerto Rico, carried out a traffic stop after observing the appellant drive through a red light.  Upon approaching the appellant's vehicle, the officers spotted a firearm near the appellant's thigh.  Once the appellant admitted that he lacked a license to carry a firearm, the officers arrested him.  At the

- 2 -

same time, they seized a .40 caliber Glock pistol loaded with nine rounds of ammunition and an additional Glock magazine (also loaded with nine rounds of ammunition) from the vehicle.

During an interview later that morning with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents, the appellant stated that he had obtained the firearm from a friend the day before and that he was on his way to purchase drugs for his personal consumption when stopped. He volunteered that he had arrived in Puerto Rico six days earlier from New York, where he was on parole "for possession of [one] kilogram of cocaine." A background check soon revealed that the appellant had previously been convicted of a crime punishable by imprisonment for more than one year.

In due course, a federal grand jury sitting in the District of Puerto Rico returned a single-count indictment, charging the appellant with possession of a firearm as a convicted felon. See 18 U.S.C. § 922(g)(1). After some preliminary skirmishing, not relevant here, the appellant pleaded guilty to this charge.

At the disposition hearing, the district court heard arguments of counsel and the appellant's allocution. Emphasizing the heightened need for deterrence in light of the appellant's earlier brushes with the law, the government requested a 21-month prison sentence. Before the appellant's counsel spoke, the court

suggested that she address its concern that the appellant was an individual for whom "the guidelines do not necessary make justice" and that, therefore, the case "perhaps would warrant an upward[] variance." In response, counsel noted the appellant's successful completion of a diversionary drug-treatment program, his work as a barber while in prison, and the likelihood that he would face an additional state sentence for violating the conditions of his parole. In light of these considerations, she deemed a 17-month prison sentence sufficient. Without objection, the district court adopted the guideline calculations limned in the PSI Report, set the appellant's total offense level at 12, and placed him in criminal history category III. These uncontested determinations yielded a GSR of 15 to 21 months. After mulling the sentencing factors elaborated in 18 U.S.C. § 3553(a), the court varied upward and imposed a 36-month term of immurement.

In the process, the court explained its sentencing rationale. To begin, the court observed that over the previous "five [to] six years," the appellant had squandered "opportunity after . . . opportunity after . . . opportunity" to live in a law-abiding manner. The court mentioned three relevant data points to undergird this observation.

First, the court referenced a 2011 robbery charge in Puerto Rico. Drawing on factual details that the appellant himself had reported to the probation officer, the court noted that this

charge had been reclassified as an illegal appropriation charge and then dismissed following the appellant's completion of a diversionary drug-treatment program.[1]  But, the court observed, the appellant had absconded from the drug-treatment program at one point.  According to unchallenged statements in the PSI Report, he was arrested and ordered to serve four months in prison after his abscondment.  He subsequently completed the program only after his release from that prison stay.

Second, the court noted that in 2016 — only two years after securing the dismissal of his illegal appropriation charge — the appellant was found in possession of one kilogram of cocaine, was charged with possession of a controlled substance in the third degree, and was ultimately sentenced by a New York court to serve an incarcerative term, followed by parole.[2]  Importantly, the appellant admitted to ATF agents that he was "on parole in New York for possession of [one] kilogram of cocaine" when he was arrested.

---

[1] At the disposition hearing, the appellant described the robbery charge as "expunged."  On appeal, though, he describes the charge as "dismissed."  This latter description is consistent with both the PSI Report and the sentencing court's characterization.

[2] The appellant describes this charge as having been "reclassified" from an "initial charge of possession of one kilo[gram] of cocaine" to possession of a controlled substance. Withal, the PSI Report contains no indication that the appellant was ever initially charged with any offense other than possession of a controlled substance in the third degree; and we discern no concrete support elsewhere in the record for the appellant's characterization of this charge as having been "reclassified."

Third, the court discussed the circumstances surrounding the offense of conviction. Again drawing on the unchallenged PSI Report, the court observed that, during the pendency of his parole, the appellant had requested and been granted leave to complete his parole in Puerto Rico. Moreover, the court expressed concern that the appellant had failed to report to the probation office upon his arrival in Puerto Rico. To cap the matter, the court noted that the appellant, despite being fully aware of the conditions of his parole, had been found with a firearm on his way to purchase drugs mere days after his arrival in Puerto Rico, in brazen violation of those conditions. The court concluded that the appellant "simply [did] not respect the law or respect the conditions which . . . [were] placed on [him]." The appellant's continued criminality, in the court's view, bespoke a troubling "trajectory over the last couple of years."

The court went on to stress the seriousness of the crime and community-related factors, concluding that the appellant's offense was "more serious than just a simple mathematical calculation" and warranted an upward variance of 15 months above the top of the GSR. Consequently, the court imposed a 36-month incarcerative sentence.

After the court pronounced the sentence, the appellant objected to it in general terms as both procedurally and substantively unreasonable. This timely appeal followed.

## II. ANALYSIS

Appellate review of a criminal defendant's claims of sentencing error involves a two-step pavane. See United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017). Under this bifurcated framework, we first examine the validity vel non of any claims of procedural error. See id. If the sentence passes procedural muster, we then examine any challenge to its substantive reasonableness. See id. Here, the appellant attacks his sentence both procedurally and substantively. We address each line of attack in turn.

### A. Procedural Reasonableness.

The appellant's procedural plaint focuses on the district court's treatment of his dismissed illegal appropriation charge and his prior controlled substance conviction. Although the appellant objected that the sentence was "procedurally unreasonable" after the court imposed sentence, his objection was wholly generic and made no mention of the discrete claims of procedural error that he now unveils. Such general objections are inadequate to preserve specific challenges to the sentencing court's particularized findings because they do not afford the sentencing court either notice of the asserted claims of error or an opportunity to rectify those claimed errors. See United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017); United States v. Ahrendt, 560 F.3d 69, 76 (1st Cir. 2009). Thus, our review of

- 7 -

the appellant's procedural claims is for plain error.  See Matos-de-Jesús, 856 F.3d at 177-78.  Under this rigorous standard, the appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  In this instance, the first element of the four-part test proves fatal to the appellant's procedural challenge.

We start with the appellant's contention that the district court "elasticized his criminal history beyond its limits" by considering a 2011 robbery charge that had been reclassified to an illegal appropriation charge and eventually dismissed following his completion of a diversionary drug-treatment program.  In mounting this contention, the appellant relies primarily on our decision in United States v. Marrero-Pérez, 914 F.3d 20 (1st Cir. 2019).  There, we reviewed an upward departure imposed largely on the basis of prior arrests that had not resulted in convictions, most of which were unsupported by reliable independent evidence that the underlying conduct had occurred.  See id. at 22-24.  We held that error occurs when a sentencing court imposing an upward departure "relies on an arrest report, without some greater indicia of reliability that the conduct underlying the arrest took place."  Id. at 24.

Consequently, district courts should afford "no weight" to "arrests not buttressed by convictions or independent proof of conduct" when fashioning departures. Id. at 22 (citing U.S.S.G. § 4A1.3(a)(3)).

The appellant's reliance on Marrero-Pérez is mislaid. For one thing, Marrero-Pérez involved an upward departure, not — as here — an upward variance. See United States v. Rodríguez-Reyes, 925 F.3d 558, 564 (1st Cir.) (distinguishing Marrero-Pérez on this ground), cert. denied, ___ S. Ct. ___ (2019). The difference between the two is hardly semantic. A "departure" is a "term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." Id. at 567 (quoting United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014)). A variant sentence, by contrast, "result[s] from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)." Id. (quoting Aponte-Vellón, 754 F.3d at 93).

This is not the only basis on which we find Marrero-Pérez inapposite. Even if we assume for argument's sake that Marrero-Pérez has bite beyond the departure context, the rule of that case provides that error occurs only when the sentencing court "equate[s] arrest with guilt" or otherwise gives "weight" to or "relies on" bare arrest records without sufficiently reliable corroborating evidence. 914 F.3d at 22-24. No error occurs when

the sentencing court "merely refer[s]" to the defendant's dismissed charges "in the course of relying on certain conduct that took place in connection with the dismissed charges" and that conduct is described in unchallenged portions of the PSI Report. United States v. Mercer, 834 F.3d 39, 50 (1st Cir. 2016) (emphasis omitted). Where conduct surrounding a dismissed charge is "set forth in undisputed portions of the [PSI Report]," the district court is "entitled to rely on that conduct when sentencing" the defendant. Id.; see Rodríguez-Reyes, 925 F.3d at 568 (noting that Marrero-Pérez did not purport to overrule Mercer and similar precedents). This is such a case.

The court below did not equate the appellant's arrest for robbery with guilt. Nor did it indicate that it was giving any impermissible weight to either the arrest or the conduct that gave rise to it. Rather, the court — drawing on the appellant's own admissions in the unchallenged PSI Report — simply described the basic procedural background of the illegal appropriation charge in the course of discussing conduct related to that charge. This conduct included the appellant's abscondment from the diversionary drug-treatment program and his subsequent possession of one kilogram of cocaine just two years after securing the dismissal of the illegal appropriation charge. These admitted facts were relevant to the sentencing calculus: they strongly supported the court's articulated concern that the appellant

"simply [did] not respect the law," despite having squandered "several opportunities" during his various encounters with the criminal justice system.

Moreover, it is common ground that a sentencing court "may take into account any [relevant] information that has sufficient indicia of reliability." United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015). As a general rule, the PSI Report "bears sufficient indicia of reliability to permit the district court to rely on it at sentencing." United States v. González-Rodríguez, 859 F.3d 134, 137 (1st Cir. 2017) (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003)); see United States v. Ocasio-Cancel, 727 F.3d 85, 92 (1st Cir. 2013) ("When a fact is set out in a presentence investigation report and is not the subject of a timely objection, the district court may treat the fact as true for sentencing purposes."). This case falls comfortably within the sweep of the general rule. Within the circumstances at hand, we discern no error — let alone plain error — in the district court's brief recitation of procedural facts furnished by the appellant himself and adumbrated in the unchallenged PSI Report, notwithstanding that those facts related to a dismissed charge.

Let us be perfectly clear. "Reliance on bare arrests — unexplained in the [PSI Report] or elsewhere in the district court record and 'not buttressed' by 'some greater indicia of

reliability' — can indeed be problematic, at least for an upward departure."[3]  Rodríguez-Reyes, 925 F.3d at 564 (quoting Marrero-Pérez, 914 F.3d at 22, 24).  In the same vein, we have "cautioned against district courts relying on mere arrests as indicative of a defendant's character to justify an upward departure from the GSR since a criminal charge alone does not equate with criminal guilt of the charged conduct."  United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012).  But nothing in our precedents forbids a sentencing court's mere mention of the undisputed facts surrounding a dismissed charge as part of a broader assessment of the defendant's troubling trajectory regarding his serial encounters with the criminal justice system.  See Rodríguez-Reyes, 925 F.3d at 564 n.4.  Thus, we discern no procedural error — plain or otherwise — in the district court's consideration of the conduct surrounding the appellant's dismissed illegal appropriation charge.  The court's discussion of the charge was confined to facts

---

[3] We have significant doubt that the appellant's dismissed illegal appropriation charge was equivalent to a bare arrest record or other dismissed criminal charge, neither of which "equate with criminal guilt of the charged conduct."  United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012).  The government plausibly argues that the appellant was required to plead guilty to the illegal appropriation offense as a condition of participation in the diversionary drug-treatment program.  Puerto Rico law appears to support this agrument.  See P.R. Laws Ann. tit. 34A, app. II, Rule 247.1 (stating that a court may, "without returning a verdict of guilty," stay all criminal proceedings and place a defendant in a diversionary treatment program only "[o]nce the defendant has pleaded guilty").  In the last analysis, though, we need not reach this argument — and we take no view of it.

that the appellant admitted, which had been incorporated into the unchallenged PSI Report.

There remains the appellant's skeletal contention that the district court committed procedural error by considering his prior conviction for possession of a controlled substance in the third degree. His brief devotes no more than a single sentence to this contention, stating conclusorily that the district court somehow "committed an error in considering the initial charge of possession of one kilo[gram] of cocaine that was reclassified to criminal possession of a controlled substance in a New York [s]tate conviction." Putting to one side the question of whether the appellant was ever initially charged with "possession of one kilo[gram] of cocaine," we find that the appellant has waived this contention.

We need not tarry. Few principles are better settled in this circuit than that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). So it is here.[4]

---

[4] At any rate, we think it plain that the district court did not err by discussing the procedural details of this conviction — as delineated in the unchallenged PSI Report — in the course of evaluating the appellant's history and characteristics and the circumstances precipitating the offense of conviction. See 18 U.S.C. § 3553(a)(1); see also Ocasio-Cancel, 727 F.3d at 92 (explaining that undisputed facts in the PSI Report can be "treat[ed] . . . as true for sentencing purposes").

## B. **Substantive Reasonableness.**

This leaves the appellant's contention that his 36-month sentence is substantively unreasonable. Specifically, the appellant asserts that the district court lacked a plausible rationale for imposing an upward variance because its reasoning was based, at least in part, on the appellant's dismissed illegal appropriation charge and his conviction for possession of a controlled substance in the third degree.

Where, as here, a claim of substantive unreasonableness is preserved, appellate review is for abuse of discretion. See Matos-de-Jesús, 856 F.3d at 179. We undertake this inquiry mindful that "reasonableness is a protean concept" in the sentencing context. United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). Even so, the inquiry is not standardless: the hallmarks of a substantively reasonable sentence are a "plausible sentencing rationale" and a "defensible result." Martin, 520 F.3d at 96. These are broad parameters, and in any given case there is no single reasonable sentence "but, rather, a universe of reasonable sentencing outcomes." United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015) (quoting Clogston, 662 F.3d at 592).

So, too, we proceed on the understanding that it is not our task simply to second-guess a sentencing court's considered decisions about matters squarely within its discretion. See

Clogston, 662 F.3d at 593. Even when we are reviewing a significant upward variance, we must afford "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Vargas-García, 794 F.3d at 167 (quoting Martin, 520 F.3d at 92).

As we have explained, there was nothing improper about the manner in which the district court considered the illegal appropriation charge. Nor was there anything improper about its consideration of the controlled substance conviction. Although the court did refer to the conduct underlying the latter conviction — that the appellant had been "found in possession of one kilo[gram] of cocaine" — this reference was based squarely on the appellant's admission to ATF agents that he was "on parole for possession of [one] kilogram of cocaine." And to cinch the matter, the appellant never challenged the PSI Report's description of the conduct underlying this conviction.

We add that the two charges spotlighted by the appellant were far from the only factors that informed the district court's sentencing determination. In explaining its upward variance, the court made pellucid that it was taking into account all of the section 3553(a) factors. Such a statement, in itself, is "entitled to significant weight." Rodríguez-Reyes, 925 F.3d at 568 (quoting United States v. Calderón-Lozano, 912 F.3d 644, 648 (1st Cir. 2019)). Relatedly, the court discussed the appellant's persistent

disrespect for the law, his flagrant violation of the conditions of his parole, and the alarming rate of gun-related deaths in Puerto Rico. These observations plainly reflect the section 3553(a) factors, including the need to protect the community, to deter others from similar criminal conduct, and to promote respect for the law. See 18 U.S.C. § 3553(a)(2); United States v. Flores-Machicote, 706 F.3d 16, 22-23 (1st Cir. 2013) (explaining that a sentencing court "may consider community-based and geographic factors").

Furthermore, the appellant's repeated return to criminal behavior despite earlier encounters with the criminal justice system reflected an abject failure to renounce criminality and amply justified an upwardly variant sentence. The district court was entitled to give weight to the appellant's pattern of unalloyed criminal behavior "when determining the stringency of the sentence" to be imposed under the section 3553(a) factors. Gallardo-Ortiz, 666 F.3d at 814-15. Taken together, these justifications constitute a plausible sentencing rationale — a rationale tailored to the facts and circumstances of the case at hand.

We likewise conclude that the district court reached a defensible result. After undertaking a thorough analysis of the section 3553(a) factors, the court deemed an upward variance appropriate and imposed a 36-month sentence. Although the extent

of the variance (15 months) was substantial, "even a substantial variance does not translate, ipso facto, into a finding that the sentence is substantively unreasonable." Flores-Machicote, 706 F.3d at 25. Sentencing is "more an art than a science," and the weighing of relevant factors is a task best left, within wide limits, to the district court's informed discretion. Clogston, 662 F.3d at 593. Those limits were not exceeded here: the appellant, a convicted felon, was found in possession of a dangerous weapon, just days after arriving in Puerto Rico and in direct violation of the conditions of his parole. To make a bad situation worse, this offense was the latest occurrence in a pattern of criminality spanning a number of years — a pattern that emerged despite the fact that the appellant had been afforded several opportunities to reform his behavior and respect the law. Under these circumstances, we cannot say that a 36-month sentence, though upwardly variant, falls outside the wide universe of substantively reasonable sentences.

That ends this aspect of the matter. Because the district court articulated a plausible sentencing rationale and achieved a defensible result, we hold that the challenged sentence was substantively reasonable.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the appellant's sentence is

**Affirmed.**