# United States Court of Appeals
## For the First Circuit

Nos. 19-1300
    19-1298
    19-1296

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID JOEL VÉLEZ-ANDINO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]
[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Mauricio Hernandez Arroyo and Law Offices of Mauricio Hernandez Arroyo on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Gregory B. Conner, Assistant United States Attorney, on brief for appellee.

August 30, 2021

**SELYA**, **Circuit Judge**.  In these consolidated sentencing appeals, defendant-appellant David Joel Vélez-Andino challenges two related sentences.  His first set of challenges relates to an upwardly variant sixty-month sentence that followed his conviction on charges of being a felon in possession of a firearm and possession of a machine gun.  The conduct underlying those offenses also violated the conditions of an ongoing term of supervised release.  The appellant's second set of challenges relates to a twenty-four-month sentence that followed the revocation of his supervised release term.

Life is a series of choices, and there are consequences for choosing to be armed instead of choosing either to conform to the criminal law or to abide by applicable conditions of supervised release.  Because the appellant chose to be armed notwithstanding his prohibited-person status, the consequences here were predictable.  Concluding, as we do, that his claims of error are futile, we affirm both sentences.

**I**

We briefly rehearse the relevant facts and travel of the case.  Where, as here, both sentences followed the appellant's admission of guilt, we draw the facts from the change-of-plea colloquy, the undisputed portions of the presentence investigation report (PSI Report) and sentencing transcript in the firearms case, and the transcript of the revocation hearing.  See United States

v. Velázquez, 777 F.3d 91, 93 (1st Cir. 2015); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In 2012, the appellant pleaded guilty to two indictments, both of which charged him with possession of a firearm by a convicted felon. See 18 U.S.C. § 922(g)(1). In May of 2013, the district court sentenced him to concurrent sixty-five-month terms of immurement, to be followed by three years of supervised release. The appellant served his prison time and commenced his supervised release in August of 2017.

Roughly three months later, Bureau of Alcohol, Tobacco, Firearms and Explosives task force officers received a tip that a convicted felon, later identified as the appellant, was in possession of a firearm. The officers began surveilling the appellant's neighborhood in Bayamón, Puerto Rico. On November 16, they observed the appellant driving recklessly and attempted unsuccessfully to stop him. A chase ensued, and the appellant was eventually apprehended.

The officers asked the appellant if he was armed. The appellant told them that he had a pistol in his fanny pack. A subsequent search of the fanny pack revealed a .40 caliber Glock pistol with one round in the chamber, an extended magazine (attached to the pistol) with twenty rounds, a magazine with thirteen rounds, and an empty magazine. The firearm had a "chip," which converted it into a machine gun.

- 3 -

On November 30, 2017, a federal grand jury sitting in the District of Puerto Rico returned a two-count indictment, charging the appellant with possession of a firearm and ammunition by a convicted felon, see id. § 922(g)(1), and possession of a machine gun, see id. § 922(o). In July of 2018, his probation officer moved to revoke the original supervised release term based on the conduct underlying the new charges.

The appellant initially maintained his innocence with respect to the new charges. In October of 2018, the appellant reversed course and entered a straight guilty plea to those charges. The district court accepted the plea and ordered the preparation of a PSI Report. When the PSI Report was delivered, the appellant raised two objections to it: he objected to the addition of two criminal history points for a "2004[] conviction for sale or delivery of cocaine under Florida law," and he objected to the computation of his base offense level. The court sustained both objections. The revised guideline calculations (with adjustments that are not disputed here) resulted in a total offense level of 17 and a criminal history category (CHC) of IV. These data points translated into a guideline sentencing range (GSR) of 37-46 months.

At the disposition hearing, defense counsel sought to provide context for the offenses of conviction. He claimed that the appellant "possess[ed] the firearm in an effort to protect

- 4 -

himself" due to a "blood feud" between two families that resulted in the murder of one of the appellant's brothers. He urged the court to consider this context either as a mitigating factor under 18 U.S.C. § 3553(a) or as evidence of duress under USSG §5K2.12. Counsel advocated for a sentence of 46 months. The appellant's allocution reinforced counsel's importunings: he said that he carried the firearm because he "fear[ed] for [his] life" and that was "the only way" to "protect [his] life and feel somewhat safe." The government took a different view, stressing that the appellant's criminal history began before the alleged feud. It sought an upwardly variant sentence of sixty months.

By this time, all parties had accepted the GSR of 37-46 months. The sentencing court (Pérez-Giménez, J.) started there and then mulled the sentencing factors delineated in 18 U.S.C. § 3553(a). The court discussed the appellant's age, family, education, health, history with controlled substances, drug treatment, and extensive criminal history. It commented that this was the appellant's "fifth known conviction" and that "[t]wo of his prior . . . convictions [were] for illegal possession of firearms." It also commented that the appellant "ha[d] about ten known charges for offenses that include . . . weapons law violations, possession of ammunition, brandishing and discharging of firearms," which ended either in dismissal or in a finding of no probable cause. The court concluded by considering the offenses

of conviction and the fact that they had been committed less than three months after the appellant's term of supervised release commenced. The appellant's conduct, the court stated, "demonstrated utter disregard for the law." In the end, the court imposed an upwardly variant sixty-month term of immurement on each count, to run concurrently.

Two weeks later, the district court (Domínguez, J.) convened a revocation hearing. At the revocation hearing, defense counsel again sought to provide context for the appellant's firearm offenses, again asked the court to consider that context in determining the appropriate sentence, and requested a twenty-month revocation sentence. In his allocution, the appellant complemented his counsel's request, stating that he "violated [his] probation . . . [because he] was fearing for [his] life." The government asked for a sentence of 24 months.

The district court found that the appellant had violated the conditions of his supervised release, and it revoked the original term of supervision. The court then noted that the appellant's new charges constituted a Grade A violation, see USSG §7B1.1(a)(1), and calculated the advisory GSR at 24-30 months, see id. §7B1.4(a). The court observed, however, that because the underlying offense was a Class C felony, see 18 U.S.C. § 924(a)(2), the maximum permitted term of imprisonment was 24 months, see id. § 3583(e)(3). The court expressed the view that the appellant

"ha[d] demonstrated total disregard for the law and that he [was] unable to comply with the conditions of supervised release imposed by the Court." Emphasizing that "less than three months after his release from federal custody, [the appellant] was arrested in possession of a loaded weapon," the court determined that it would fashion "a sentence that reflects the seriousness of the offense, . . . promote[s] respect for the law, . . . provide[s] just punishment, and afford[s] adequate deterrence and protect[s] our community." To this end, it imposed a twenty-four-month term of immurement, to be served consecutive to the sentence imposed for the felon-in-possession offenses.

The appellant filed timely notices of appeal with respect to both sentences. His appeals have been consolidated in this court.

## II

"Appellate review of claims of sentencing error entails a two-step pavane." United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017). "Under this bifurcated approach, we first examine any claims of procedural error. If the challenged sentence passes procedural muster, we then proceed to examine any claim of substantive unreasonableness. At both steps of this pavane, our review of preserved claims of error is for abuse of discretion." United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020) (internal citations omitted). "The abuse-of-discretion

standard is not monolithic:  within it, we review the sentencing court's findings of fact for clear error and questions of law . . . de novo."  United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020).

A different standard obtains when a claim of error is raised for the first time on appeal.  Our review of unpreserved claims of error is for plain error.  See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  "The plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). "The proponent of plain error must carry the devoir of persuasion as to each of four showings:  '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appell]ant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'"  United States v. Padilla-Galarza, 990 F.3d 60, 73-74 (1st Cir. 2021) (quoting Duarte, 246 F.3d at 60).

### III

With this framework in place, we turn to the appellant's claims of error.  We start with the sentence imposed on the new charges — a sentence that the appellant challenges on both procedural and substantive grounds.

### A

The appellant's first claim of procedural error, preserved below, rests on the assertion that the district court

impermissibly considered allegations(/charges) of criminal conduct that had been dismissed. The court blundered, the appellant says, when it considered criminal conduct that "w[as] not counted in the CHC, and/or over represented the CHC."

To begin, the PSI Report included information about at least eleven prior arrests. The appellant did not object to the inclusion of this information in the PSI Report, nor did he seek to correct it in any way. The district court did not include any of these arrests either in its computation of the appellant's criminal history score or in selecting the appellant's CHC.

To be sure, the district court noted that it took into account under section 3553(a) the appellant's "extensive prior record and history of delinquent behaviors," which the court viewed as evidence of the appellant's "utter disregard for the law." In support of this statement, though, the court specifically cited only the appellant's three prior federal felony convictions and his pending revocation proceeding. We thus interpret the court's earlier reference to the appellant's prior arrests as an unadorned recitation of matters of historical fact. "[N]othing in our precedents forbids a sentencing court's mere mention of the undisputed facts surrounding a dismissed charge as part of a broader assessment of the [appell]ant's troubling trajectory regarding his serial encounters with the criminal justice system." United States v. Miranda-Díaz, 942 F.3d 33, 41 (1st Cir. 2019).

This case, then, comes within the category of cases in which "a sentencing court's mere mention of a defendant's arrest record as a matter of historical fact, without more, does not constitute an abuse of discretion." United States v. Santa-Soler, 985 F.3d 93, 96-97 (1st Cir. 2021).[1]

The appellant tries to put a different face on the court's recitation of his arrest record. Citing United States v. Rodríguez-Meléndez, 828 F.3d 35 (1st Cir. 2016), he argues — for the first time — that a sentencing court commits reversible error when it relies on facts that are "demonstrably false." That is true as far as it goes, but it does not take the appellant very

_____

[1] Even if we were to read the sentencing court's reference more broadly, the result would be unaffected. We have said before — and today reaffirm — that "when an arrest has not ripened into a conviction, a sentencing court may not rely on that arrest in a manner that equates the arrest with guilt." Díaz-Lugo, 963 F.3d at 153. That must be so because "proof only of an arrest is no proof of guilt." United States v. Marrero-Pérez, 914 F.3d 20, 23 (1st Cir. 2019). Consequently, "a sentencing court [may not] rely on an arrest record as evidence of a defendant's conduct in the absence of some reliable indication that the underlying conduct actually occurred." Díaz-Lugo, 963 F.3d at 153.
Here, however — even if we indulge the appellant's reading of the district court's comments — the record makes manifest that he never objected to the description of the conduct underlying his arrests (which was described at some length in the PSI Report). Where, as here, "conduct surrounding a dismissed charge is 'set forth in undisputed portions of the [PSI Report],' the district court is 'entitled to rely on that conduct when sentencing' the defendant." Miranda-Díaz, 942 F.3d at 40 (quoting United States v. Mercer, 834 F.3d 39, 50 (1st Cir. 2016)); accord United States v. Pupo, 995 F.3d 23, 31 (1st Cir. 2021).

far.  We review the newly emergent claim of demonstrable falsity for plain error, and we find none.

One of the three statements identified by the appellant is demonstrably true, not demonstrably false.  The court's statement that the appellant "ha[d] been convicted three times at the federal level" is accurate.  The record reflects that the appellant — in addition to some state felony convictions — has three prior federal felony convictions:  a 2004 conviction for selling and delivering cocaine and two 2012 convictions for the illegal possession of firearms.

This leaves the district court's comments, made at two different times, that "about ten known charges" and "18 charges" had previously been lodged against the appellant.  The comments, though not completely accurate, did not sink to the level of demonstrable falsity.

To invoke the "demonstrably false" proscription adumbrated in Rodríguez-Meléndez, 828 F.3d at 38, the sentencing court's challenged statements must be material.  The statements about the number of charges were not relied upon by the sentencing court and, in all events, those statements were harmless.  Importantly, the court's comments, taken together, significantly underrepresented the appellant's record, which reflected eleven arrests and over thirty charges.

The short of it is that the challenged comments were not material. There is simply no reason to believe that the lack of exactitude — if error at all — contributed to a harsher sentence for the appellant, especially since the court did not rely on the appellant's past arrest record in pronouncing sentence. Because the alleged errors could not have affected the appellant's substantial rights, plain error is plainly absent. See United States v. Rabb, 5 F.4th 95, 103 (1st Cir. 2021) (noting that to prove that alleged error affected his substantial rights, appellant must show a "reasonable likelihood that, but for the claimed error, his sentence would have been different"); United States v. Padilla, 415 F.3d 211, 221 (1st Cir. 2005) ("[T]o satisfy the prejudice prong, [the appellant] must limn circumstances indicating a reasonable probability that the trial court, but for the error, would have imposed a different, more favorable sentence.").

**B**

The appellant's next claim of procedural error, preserved below, posits that the sentencing court failed to address his "duress" argument. The baseline rule is that a sentencing court has an obligation to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). This obligation, though, does not establish a "corollary duty" for the sentencing court "to explain why it eschewed other suggested

sentences." United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014); see United States v. Sayer, 916 F.3d 32, 38-39 (1st Cir.) (noting that "courts are not required to [] explain why they rejected a particular defense argument in favor of a lower sentence"), cert. denied, 139 S. Ct. 2731 (2019). Simply put, "a sentencing court is under no obligation [] to address every argument that a defendant advances in support of his preferred sentence." Rivera-Morales, 961 F.3d at 19; see United States v. Cortés-Medina, 819 F.3d 566, 571 (1st Cir. 2016) (finding no abuse of discretion when "sentencing court[] fail[ed] to acknowledge explicitly that it had mulled the defendant's arguments").

In this case, the appellant does not contend that the sentencing court was unaware of his duress argument. Nor could he: that line of argument was vigorously pursued by defense counsel at the disposition hearing. There is no reason to think that the sentencing court overlooked it. "When a defendant has identified potentially mitigating sentencing factors and those factors are thoroughly debated at sentencing, the fact that the court 'did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored.'" Díaz-Lugo, 963 F.3d at 152 (quoting United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012)). It follows that the sentencing court's silence as to the appellant's duress argument does not signal an abuse of discretion.

The appellant also presses a related argument. He suggests that the sentencing court abused its discretion when it heard about the attempts on the appellant's life and the appellant's stated need to carry a weapon for protection but refused to depart downward on the ground of duress. See USSG §5K2.12. This suggestion does not withstand scrutiny.

To be sure, USSG §5K2.12 states, in pertinent part, that a sentencing "court may depart downward" if the appellant committed the offense of conviction due to "serious coercion, blackmail or duress." But "[i]t is an immutable verity that 'absent extraordinary circumstances, a criminal defendant cannot ground an appeal on the district court's discretionary decision not to undertake a downward departure from the sentencing range indicated by the guidelines.'" United States v. Amparo, 961 F.2d 288, 292 (1st Cir. 1992) (quoting United States v. Ruiz, 905 F.2d 499, 508-09 (1st Cir. 1990)). There are no extraordinary circumstances here and, thus, no abuse of discretion with respect to the eschewal of a downward departure.

## C

The appellant's final claim of procedural error posits that the court erred by failing to "articulate any specific Section 3553(a) rationale" and by failing to "consider the totality of the circumstances at sentencing." Since this claim of error was not advanced below, our review is for plain error. The appellant

falters at the first step of plain error review because he is unable to show that any error occurred.

As said, a sentencing court is statutorily required to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). Although the court is obliged to consider all the applicable factors limned in section 3553(a), its explanation need not "be precise to the point of pedantry." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). When — as in this case — a sentencing "court explicitly states that it has considered the section 3553(a) factors, '[s]uch a statement is entitled to some weight.'" United States v. Ruiz-Huertas, 792 F.3d 223, 227 (1st Cir. 2015) (alteration in original) (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)).

The court below explicitly stated that it "ha[d] considered the [] sentencing factors as set forth in 18 U.S.C. 3553(a)." It proceeded to discuss several of those factors. The court concluded its analysis by reiterating that it had considered the section 3553(a) factors, and it then emphasized "the need to promote respect for the law and protect the public from further crimes by [the appellant], as well as address the issues of deterrence and punishment." No more was exigible.

Finally, the appellant contends that his sixty-month upwardly variant sentence is substantively unreasonable. "We review challenges to the substantive reasonableness of a sentence for abuse of discretion." United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020) (citing Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020)).

"In the sentencing context, 'reasonableness is a protean concept.'" Clogston, 662 F.3d at 592 (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). As we previously have observed, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Id. We must ascertain, then, whether the appellant's "sentence falls within this broad universe." Bruno-Campos, 978 F.3d at 809 (quoting Rivera-Morales, 961 F.3d at 20).

In making this appraisal, "we cannot substitute our judgment of the appropriate sentence for that of the sentencing court; to the contrary, we must accord significant deference to the court's informed determination that the section 3553(a) factors justify the sentence imposed." Rivera-Morales, 961 F.3d at 21. This approach does not change through some mysterious alchemy simply because the sentencing court decides to vary from the guideline range. See id. "Even when we are reviewing a significant upward variance, we must afford 'due deference to the

district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" Miranda-Díaz, 942 F.3d at 42 (quoting United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015)).  When all is said and done, "a sentence is substantively reasonable so long as the sentencing court offers a plausible rationale and the sentence represents a defensible result."  Rivera-Morales, 961 F.3d at 21.

Here, the sentencing court clearly articulated why it believed that the appellant's case demanded an upward variance. The court recounted that the appellant had an "extensive prior record and history of delinquent behaviors which began at age 20." Moreover, the appellant "was found in the illegal possession of a black Glock pistol loaded [and] fitted . . . to fire automatically by a single pull of the trigger" only three months after his term of supervised release began.  In the court's view, the appellant's "conduct [] demonstrated utter disregard for the law" and showed a manifest need for deterrence.  This sentencing rationale was plausible.

So, too, the challenged sentence represents a defensible outcome.  The sentencing court thoroughly considered the section 3553(a) factors and determined that an upward variance was appropriate.  Although the extent of the variance was substantial (14 months over the top of the GSR), "even a substantial variance does not translate, ipso facto, into a finding that the sentence

is substantively unreasonable." United States v. Flores-Machicote, 706 F.3d 16, 25 (1st Cir. 2013). The appellant previously served a sixty-five-month prison sentence for being a convicted felon in possession of a weapon. Less than three months after being released from prison, he committed the same type of offense. To make a bad situation worse, he was in possession of a machine gun the second time around. And this new offense was the latest in a pattern of criminality spanning several years — a pattern that included, among other malefactions, other felony firearms convictions. Under these infelicitous circumstances, we cannot say that a sixty-month sentence, though upwardly variant, falls outside the broad universe of reasonable sentences.

## IV

This brings us to the appellant's twenty-four-month sentence following the revocation of his supervised release term. The appellant challenges this sentence on both procedural and substantive grounds.

### A

The appellant first asserts that the sentencing court erred by not adequately considering mitigation evidence. Specifically, he points to his insistence that he "failed to comply with the conditions of his release because he feared for his life." Because this claim of error was preserved below, review is for abuse of discretion.

Although a defendant is entitled to bring mitigating circumstances to the court's attention at sentencing, "[m]erely raising potentially mitigating factors does not guarantee a lesser sentence." United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010). In the last analysis, it is the sentencing court's prerogative to "draw upon [its] familiarity with a case, weigh the factors enumerated in [the relevant statute], and custom-tailor an appropriate sentence." Flores-Machicote, 706 F.3d at 20 (citing Kimbrough v. United States, 552 U.S. 85, 109 (2007)).

Here, the appellant does not contend that the sentencing court overlooked his allegedly mitigating circumstances but, rather, contends that the court did not attach enough heft to them. That complaint rings hollow. As we have said in the context of substantive reasonableness, a sentencing court's decision "not to attach to certain . . . mitigating factors the significance that [an] appellant thinks they deserved does not make [a] sentence unreasonable." Clogston, 662 F.3d at 593. That statement applies equally to claims of procedural sentencing error: it is the district court's prerogative — indeed, its duty — to weigh the various factors that must be considered in the sentencing calculus. We will not disturb a sentencing court's reasoned decision to weigh some factors more heavily than others. See United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009). This is such a case.

- 19 -

**B**

The appellant next asserts that the sentencing court erred by "not consider[ing] the totality of the circumstances and section 3583(a) [sic] considerations." Because this claim of error was not preserved below, review is for plain error.

The appellant stumbles at the first step of plain error review because he cannot show that an error occurred. 18 U.S.C. § 3583(e) sets forth the various factors that a sentencing court must consider before imposing a revocation sentence. This statute expressly incorporates a host of sentencing factors limned in section 3553(a). Those incorporated factors include "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); "the history and characteristics of the defendant," id.; the need "to afford adequate deterrence to criminal conduct," id. § 3553(a)(2)(B); and the need "to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C).

"Although a sentencing court must consider each of the factors that section 3583(e) identifies, the court is not obliged to address these factors 'one by one, in some sort of rote incantation when explicating its sentencing decision.'" United States v. Márquez-García, 862 F.3d 143, 145 (1st Cir. 2017) (quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006)). Instead, "the court need only identify the principal

factors upon which it relies to reach its sentencing decision." Id.

Here, the sentencing court's explanation for imposing the twenty-four-month revocation sentence is admittedly terse. The court did not mention each and every section 3583(e) factor. It did, however, identify the factors it considered most salient when it stated that it would "impose a sentence that reflects the seriousness of the offense," "promote respect for the law," "provide just punishment, and afford adequate deterrence and protect our community." The fact that the court did not mention other factors "does not mean that it failed to consider them." Id. at 145-46. Viewed in context, we find the court's explanation sufficient. Consequently, we reject the appellant's claim of procedural error.

## C

The appellant's challenge to the substantive reasonableness of his revocation sentence need not detain us. The record makes manifest that the sentencing court articulated a plausible sentencing rationale. Its rationale centered on the fact that — less than three months after starting his supervised release — the appellant "was arrested in possession of a loaded weapon." This behavior, the court found, "demonstrated total disregard for the law." And based on this assessment, the court

reasonably concluded that a significant prison sentence was warranted.[2]

Given this plausible rationale, the sentence itself is easily defensible. A defendant who violates the conditions of his supervised release breaches the trust that the court has extended to him. See United States v. Santiago-Rivera, 594 F.3d 82, 85 (1st Cir. 2010). Here, the appellant's violation was egregious: the firearm that he unlawfully possessed during his supervised release was equipped with a chip that converted it into a machine gun. The twenty-four-month sentence that the court imposed was at the low end of the advisory GSR and was commensurate with the serious violation that had been committed. Taking into account the totality of the circumstances, we conclude that this sentence, too, was within the "universe of reasonable sentencing outcomes." Clogston, 662 F.3d at 592.

## V

We need go no further. For the reasons elucidated above, both of the challenged sentences are

**Affirmed**.

---

[2] This rationale echoes the rationale for the sentence imposed on the new charges. See supra Part III(D). We do not view this similarity as an exercise in mimicry but, rather, as a compelling indication of the plausibility of both rationales. Where, as here, two experienced triers have evaluated both the appellant's culpable conduct and the relationship of that conduct to the goals of sentencing in much the same way, their sentencing rationales are mutually reinforcing.