**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 21-1285

UNITED STATES OF AMERICA,

Appellee,

v.

BENJAMIN MELÉNDEZ-RIVERA, a/k/a Bengie, a/k/a Ben,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

Francisco J. Adams-Quesada on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Maarja T. Luhtaru, Assistant United States Attorney, on brief for appellee.

October 6, 2022

**SELYA**, **Circuit Judge**. Weighing the various factors made relevant under 18 U.S.C. § 3553(a) is — in the first instance — quintessentially a matter for the sentencing court. In this appeal, defendant-appellant Benjamin Meléndez-Rivera challenges the sentencing court's performance of that function. Concluding, as we do, that the defendant's sentence is both procedurally sound and substantively reasonable, we affirm.

**I**

We briefly rehearse the facts and travel of the case. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

On October 14, 2016, the defendant and another individual brandished firearms at two female employees of Banco Popular as the employees were replenishing automatic teller machines. The ensuing robbery yielded a haul of approximately $80,000.

The defendant then proceeded to scout his next target: a Ranger American armored truck. On March 30, 2017, the defendant and a band of confederates went to a different Banco Popular branch to lie in wait for the armored truck. When the vehicle arrived, two of the defendant's accomplices approached the courier. As the

courier attempted to reach for his weapon, the accomplices began firing their guns wildly, killing two bystanders and wounding the courier. With about $16,000 in hand, the robbers fled. Subsequent investigation revealed that the defendant had planned the robbery, supplied one of the weapons used in it, and facilitated the escape.

The authorities apprehended the defendant on December 8, 2017. A federal grand jury sitting in the District of Puerto Rico later returned an indictment. Our focus, though, is on the superseding indictment, which charged the defendant, amongst others, with conspiracy to interfere with commerce by robbery, see 18 U.S.C. § 1951(a); interference with commerce by robbery, see id.; two counts of possession of firearms in furtherance of a crime of violence resulting in death, see id. § 924(j)(1); being a felon in possession of a firearm, see id. § 922(g)(1); bank robbery, see id. §§ 2113(a) & (d); and possession and brandishing of firearms in furtherance of a crime of violence, see id. § 924(c)(1)(A)(ii). The first count referred to both the armored truck robbery and the robbery at the Banco Popular branch, the next three counts referred only to the armored truck robbery, and the last two counts referred only to the robbery at the Banco Popular branch. The sentencing court appropriately regarded both robberies as part of the same course of relevant conduct.

The defendant initially maintained his innocence but later agreed to plead guilty to the top count: Hobbs Act

conspiracy to interfere with commerce by robbery. The government agreed to dismiss the remaining charges against him at the time of sentencing. In due course, a plea agreement was executed and the court accepted the defendant's guilty plea.

When prepared, the PSI Report recommended a guideline sentencing range (GSR) of 292 to 365 months. Withal, the statutorily prescribed maximum term of immurement (and, thus, the guideline term of imprisonment) was 240 months. See USSG §5G1.1(a).

At the disposition hearing, defense counsel recommended a 151-month term of immurement. Counsel emphasized the defendant's advanced age (sixty-one years old at the time of the disposition hearing) and health-related conditions. Counsel also mentioned the defendant's "harsh" upbringing, "educational challenges," and role within his family. After the defendant allocuted, the prosecutor noted that the plea agreement "took into account many of the mitigating factors" that defense counsel presented. The prosecutor also observed that the two bystanders who died were relatively young and that the surviving courier was shot fifteen times. These victims and their families suffered, the prosecutor said, "because of the conduct that [the defendant] chose to engage in." Consistent with the terms of the plea agreement, the prosecutor concluded by recommending an incarcerative sentence of 188 months.

The district court began by adopting the guideline calculations limned in the PSI Report. It then reviewed the sentencing factors set forth in 18 U.S.C. § 3553(a). The court noted the defendant's age, education level, family status, and health-related conditions (specifically mentioning arthritis, hypertension, and high cholesterol). The court then considered the gravity of the offense and the defendant's participation in it. The court pointed out that the defendant had played an active role in identifying the target of the robbery and in "planning and providing instructions, . . . providing [a] weapon to be used . . ., and . . . participating in the actual robbery." Additionally, the court acknowledged that the victims were a factor that it "ha[d] to consider."

In the end, the court found two downward departures to be appropriate: one level for the defendant's age and three levels because the defendant "was not the one pulling the trigger." Taking into account "the seriousness of the offense, . . . the statements of the victims, [and] the Plea Agreement's recommendation," the court imposed a 200-month term of immurement. And as provided in the plea agreement, the court dismissed all of the remaining charges against the defendant.

This timely appeal followed.

## II

The protocol for sentencing appeals involves a two-step pavane. See United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). We first review any claims of procedural error. See id. If the sentence survives that review, we next consider any challenge to its substantive reasonableness. See id. At both steps of this pavane, our review of preserved claims of error is for abuse of discretion. See United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020).

### A

The defendant's claim of procedural error consists of an assault on the district court's balancing of the section 3553(a) factors. Before reaching the merits of this claim, we must dispose of a threshold matter. The government asserts that this claim was not preserved below and, thus, should be reviewed only for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). We need not resolve this contretemps: even if we assume, favorably to the defendant, that his claim of procedural error was preserved, the claim fails. We proceed accordingly.

Fleshing out his claim of procedural error, the defendant charges that the court "placed all weight on the negative factors and disregarded the multiple mitigating factors." This charge is belied by the record. After all, "the sentencing inquiry . . . ideally is broad, open-ended, and significantly

discretionary." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). And although the sentencing court is obliged to consider the factors outlined in 18 U.S.C. § 3553(a), the court "is not required to address those factors, one by one, in some sort of rote incantation." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). Nor need the court "address every argument that a defendant advances in support of his preferred sentence." Rivera-Morales, 961 F.3d at 19.

Here, moreover, the district court explicitly stated that it had considered all of the section 3553(a) factors. We have consistently held that "[s]uch a statement 'is entitled to some weight.'" United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010)). And in the case at hand, the district court acknowledged the potentially mitigating factors that defense counsel pressed at sentencing. Nor can it be said that the court merely paid lip service to those factors. It departed downward in consideration of the defendant's age and made a further downward departure based on the fact that he did not himself kill the victims. Given the totality of the circumstances, the defendant's claim that the court "disregarded" mitigating factors rings hollow.

To say more would be to paint the lily. Stripped of rhetorical flourishes, the defendant's real complaint appears not

to be that the court failed adequately to consider the sentencing factors but, rather, that the court did not assign certain factors the weight that the defendant would have liked. That differential weighing, without more, is not an abuse of discretion. And here, there is no "more": as we repeatedly have admonished, a sentencing court's decision not to attach to certain factors the weight that a defendant thinks they deserve does not either signal an abuse of discretion or render a sentence unreasonable.[1] See United States v. Ortiz-Pérez, 30 F.4th 107, 112-13 (1st Cir. 2022); United States v. Vélez-Andino, 12 F.4th 105, 117 (1st Cir. 2021). Consequently, we discern no abuse of discretion.

**B**

This brings us to the defendant's claim of substantive unreasonableness. In essence, the defendant contends that his sentence is substantively unreasonable because the court below improperly weighed the mitigating factors brought to its attention. Once again, our review is for abuse of discretion.

---

[1] The defendant advances for the first time in a post-briefing letter, see Fed. R. App. P. 28(j), a new claim of procedural error. This time, he alleges that the district court failed adequately to explain its deviation from the GSR. Given that no such deviation occurred, this claim is quixotic. And in any event, in the absence of extraordinary circumstances — and none exist here — issues not raised in an appellant's opening brief are deemed waived. See United States v. López, 957 F.3d 302, 309 (1st Cir. 2020). So it is here.

- 8 -

See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020).

Some background is useful. In the sentencing context, "reasonableness is a protean concept." Martin, 520 F.3d at 92. Given that the circumstances of a particular case will almost always justify more than one reasonable sentence, a sentence will be vacated as substantively unreasonable only if it "falls outside the expansive boundaries" of the universe of reasonable sentences. Id. It follows that a defendant who seeks to challenge the substantive reasonableness of his sentence faces an "uphill climb." United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017).

This climb is even steeper when — as in this instance — the challenged sentence falls within a properly calculated GSR. See Clogston, 662 F.3d at 592-93. In challenging the substantive reasonableness of such a sentence, a defendant must "adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be 'reasonable.'" United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006)). Such a challenge cannot succeed when the district court "has articulated a plausible rationale and reached a defensible result." Coombs, 857 F.3d at 452.

Here, the district court provided a plausible rationale for its sentencing decision. At the disposition hearing, the court acknowledged the parties' arguments and the circumstances of the offense. The court then gave weight to certain mitigating factors but counterbalanced those factors by giving weight to an array of aggravating factors. In that regard, the court stressed that the defendant had an "active role" in planning and executing both the armored truck robbery and the robbery at the bank. Moreover — "as a direct result" of these robberies — many victims and their families were still suffering. And the court expressed concern that the victims who died were young. Given the thoroughness of the court's analysis of the sentencing factors and the circumstances attendant to the robberies, we hold that its rationale for the sentence imposed was plausible.

So, too, we hold that the sentence represents a defensible result. The offense of conviction was very serious, and people were killed during its commission. Although the defendant claims that he had instructed his confederates not to shoot during the armored truck robbery, he plainly set the stage for the mayhem that ensued. He identified the targets of the robberies, planned the heists, supplied a firearm to be used, and participated in the commission of both the armored truck robbery and the earlier robbery. Finally, the results of the defendant's plotting were horrific: two innocent persons were killed and the

courier was severely wounded.  Given the totality of the circumstances, a 200-month prison sentence constitutes a defensible result.

To recapitulate, the sentence imposed rests on a plausible rationale and represents a defensible result.  So viewed, the reasons offered by the defendant in mitigation of that sentence are insufficient to undermine it.  We hold, therefore, that the sentence is substantively reasonable.

### III

We need go no further.  For the reasons elucidated above, the challenged sentence is

**Affirmed**.